1          IN THE UNITED STATES DISTRICT COURT
         FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **STEPHEN HARRISON COCKBURN** ) <br> **2544 ROSS ROAD, APARTMENT 103** ) <br> **SILVER SPRING, MARYLAND 20910** ) <br> ) <br> **Plaintiff,** ) <br> ) <br> v. ) <br> ) <br> **NATIONAL BOARD OF** ) <br> **MEDICAL EXAMINERS** ) <br> **3750 MARKET STREET** ) <br> **PHILADELPHIA, PENNSYLVANIA** ) <br> **19104-3102** ) <br> ) <br> **AND** ) <br> ) <br> **CATHERINE FARMER (in her official** ) <br> **capacity)** ) <br> **MANAGER, DISABILITY SERVICES** ) <br> **NATIONAL BOARD OF** ) <br> **MEDICAL EXAMINERS** ) <br> **3750 MARKET STREET** ) <br> **PHILADELPHIA, PENNSYLVANIA** ) <br> **19104-3102** ) <br> ) <br> **Defendants** ) | Civil Action No. _____ |

## COMPLAINT

### *JURISDICTION AND VENUE*

Plaintiff brings this action pursuant to Title III of the Americans with Disabilities Act (ADA), 42 U.S.C.§ 12181 and its implementing regulations.

1.  This Court has jurisdiction over this matter pursuant to 28 U.S.C.§ 1331.

2.  Title III of the ADA applies to private entities that offer examinations for post-

      secondary education.  The Defendant offers the U.S. Medical Licensing Examination (USMLE), required for medical school students to receive credentials.  42 U.S.C. § 12189.

3. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b) because the Defendant resides, transacts business, is found, and has agents in this District, and because a substantial part of the events or omissions giving rise to the Plaintiff's claim occurred in this District.

### *PARTIES*

4. Stephen Harrison Cockburn is a student at the Howard University College of Medicine in Washington, District of Columbia.  He is a resident of the State of Maryland.

5. The National Board of Medical Examiners (hereinafter, "NBME") is a private non-profit corporation located in Philadelphia, Pennsylvania.  The NBME operates and administers the USMLE.  The USMLE is a standardized multiple-choice test administered in three parts, or "Steps." The USMLE was designed as a licensing exam meant to assess an examinee's understanding of, and ability to apply, concepts and principles that are important in health and disease and constitute the basis of safe and effective patient care. In order to obtain a license to practice medicine in the United States, an examinee must obtain a passing score on all three Steps of the USMLE.

6. Catherine Farmer is an employee of the NBME, who reviews applications for accommodations on the USMLE and makes determinations regarding providing

or not providing accommodations. Her place of employment is NBME's offices in Philadelphia, Pennsylvania. She is sued in her official capacity as the Manager of Disability Services for NBME.

## STATEMENT OF FACTS

7. Stephen Harrison Cockburn (hereinafter, "Stephen") was born on March 12, 1981.

8. Currently, Stephen is in his second year of medical school at the Howard University College of Medicine.

9. In order to continue his medical education, Stephen registered for the USMLE.

10. The USMLE is administered by the Defendant, NBME, which is located in Philadelphia, Pennsylvania.

11. Stephen is a student with a disability. Specifically, Stephen has Attention Deficit/ Hyperactivity Disorder and a learning disability, which substantially limit major life activities of reading and written expression.

12. As a result of his learning disabilities and history of academic accommodations, Stephen requested reasonable accommodations for the USMLE Step 1 in April 2009.

13. Stephen's accommodation request includedextended time for the completion of the test, up to 100%, and reduced distractions.

14. Stephen's academic career has required the use of specialized educational services to enable him to compensate for his learning disabilities, and has required the use of reasonable accommodations for testing his educational aptitude and

knowledge.

15. Stephen attended the Wake County Public School System in Wake County, N.C., from kindergarten through eighth grade.

16. Starting in first grade, his teachers consistently noted his difficulties with organization and attention. His first grade teacher described him as capable of doing his work but needing "to be constantly reminded to finish all assignments." In the second grade he was noted to daydream in class and not complete class work on time, and his teacher stated "I'm very worried about this continuing problem." In third grade his teacher wrote, "[h]e needs to stay on task so that completion of assignments will be faster." In the fourth grade his teacher wrote, "[h]e needs to work consistently on completing all work and getting it turned in on time and paying attention." In the fifth grade his teacher noted that "he is still quite forgetful about his school preparations." She went on to state "I find it difficult to believe that as much as he wants to be successful, that his books and papers are left each day everywhere."

17. In the sixth grade, Stephen's teacher referred him for evaluation. A report entitled "Focus of Concern/Screening" identified areas of concern as lack of organization, lack of focused attention, being easily distracted, trouble finding place, disorganized work habits, careless, doesn't complete tasks, short attention span, and daydreams. During a classroom observation, the observer wrote that "Stephen was constantly distracted from the class by the Art work he was drawing. His assignment was incomplete but he did try to complete it." The

        report indicates that the school attempted several intervention strategies which seemed to have little if any effect.  Part VI of the report notes that after the implementation of strategies to address the behaviors described above, they continued to "interfere consistently and significantly" with his learning process.  In his academic classes that year, Stephen struggled, earning final grades of "D" in Language Arts, Math, Social Studies, and Science.

18. Stephen attended the Ravenscroft School in Raleigh, North Carolina, from ninth through twelfth grade, graduating in June 1999.  The Ravenscroft School is a private, independent school.  Stephen was diagnosed with a reading disability in 1996, and qualified for and received instructional and testing accommodations from tenth grade through twelfth grade.  Specifically, Stephen received the accommodation of extended time.

19. Dr. David Filipowski, licensed psychologist, first evaluated Stephen in 1998 when Stephen was a junior in high school.  He concluded that Stephen exhibited difficulties with processing auditory information and difficulties sustaining attention and concentration.  Based upon his testing, Dr. Filipowksi made a professional judgment as to what accommodations would be necessary for Stephen on classroom tests and assignments.  Dr. Filipowski recommended that Stephen receive extra time on tests and assignments.

20. Stephen took the PSAT without accommodations in 1997.  His scores were below the mean, and his writing skills score fell at the 6th percentile.

21. Stephen took the ACT without accommodations in February 1998.  His English

score was at the 12th percentile, his Math score was at the 24th percentile, and his Composite score placed him in the 26th percentile.

22. In preparation to attend college, Stephen took the SAT in March 1998. He took the test without accommodations. His Verbal score was 490, which was 15 points below the national average, and his Math score was 440, which was 72 points below the national average. His combined score was 87 points below the national average.

23. Based upon Dr. Filipowski's evaluation, the College Board granted Stephen accommodations of extended time. Stephen took the SAT with accommodations in November 1998. His Verbal score was 510, and his Math score was 500. Stephen again took the SAT with accommodations in March 1999. His Verbal score and his Math score were both 500. His SAT scores from the administrations with accommodations were within the national average range.

24. Stephen entered North Carolina Central University, in Durham, North Carolina, in fall of 1999. He graduated from the college in spring 2003. From 2000 through 2003, Stephen received instructional and testing accommodations of extended time.

25. Dr. Filipowksi again evaluated Stephen in 2004. Based on Stephen's performance on educational testing which he administered, Dr. Filipowski concluded that Stephen met the criteria for Reading Disorder, as defined by the Diagnostic and Statistical Manual-IV of the American Psychological Association. Dr. Filipowski also concluded that Stephen can be classified as Learning Disabled

|     | |
| --- | --- |
|     | in the areas of Reading and Written Language. Dr. Filipowksi made a professional judgment as to what accommodations would be necessary for Stephen on classroom assignments and tests, and standardized testing and evaluations. Dr. Filipowski recommended that Stephen should receive extra time on all tests and evaluations. |
| 26. | In preparation to pursue a medical career, in January 2006 Stephen applied to take the Medical College Admissions Test. He also requested accommodations. In support of that request, he submitted Dr. Filipowski's 1998 and 2005 evaluations, as well as documentation of the accommodations he received at the Ravenscroft School, at North Carolina Central University, and on the SAT. |
| 27. | Based on that documentation, the Association of American Medical College granted Stephen accommodations of extended time (one and one-half) with seating in a separate room. He utilized those accommodations when he took the MCAT in April 2006. |
| 28. | Based on his college transcript and MCAT scores, all of which were achieved with accommodations, Stephen was accepted by the Howard University College of Medicine. He entered the College of Medicine in fall of 2007, and successfully completed his first two years of medical school |
| 29. | Stephen began his application to take USMLE-Step 1 in April 2009. Based on his history of testing accommodations, he requested accommodations on the USMLE. To support his request, Stephen provided to NBME Dr. Filipowski's first and second evaluations, as well as documentation of accommodations provided in |

|     |     |
| --- | --- |
|     | high school, college and medical school, and accommodations for the SAT and the MCAT. |
| 30. | In May 2009, NBME responded that Stephen's request for accommodations was "incomplete," and requested additional information from Dr. Filipowski.  NBME also requested that Stephen provided documentation of the impact that his learning disabilities and ADHD had on his life activities. |
| 31. | Stephen provided the additional information NBME had requested. |
| 32. | In August 2009, Catherine Farmer responded by letter on behalf of the NBME by denying Stephen's request for accommodations. |
| 33. | In her letter, Catherine Farmer alleged that "Individuals with learning disabilities typically present a long history of academic difficulties and poor achievement dating back to elementary school," and that "no early school records were provided to demonstrate impairment with respect to the acquisition of reading or writing skills." |
| 34. | Stephen requested that NBME reconsider its denial of his request for accommodations. |
| 35. | To support his request for reconsideration, Stephen sought updated psychological evaluation. |
| 36. | Dr. Vincent Culotta, licensed psychologist, conducted a neuropsychological evaluation of Stephen in September and October 2009.  Dr. Culotta conducted extensive assessments, including cognitive and educational assessments, a reading assessment, and assessments of neuropsychological function.  Dr. Culotta |

|     |     |
| --- | --- |
|     | concluded that Stephen met the criteria for Attention Deficit/Hyperactivity Disorder-Predominantly Inattentive Type and a Reading Disorder, as defined by the Diagnostic and Statistical Manual-IV Revised of the American Psychological Association. |
| 37. | Dr. Culotta reviewed records from Stephen's elementary school years and noted that his "history is highly consistent with an Attention Deficit/Hyperactivity Disorder-Predominantly Inattentive Type" and that "[h]is symptoms have been evident since early elementary school and have resulted in significant academic impact upon learning." |
| 38. | Based on his evaluation of Stephen Dr. Culotta made a professional judgment as to what accommodations would be necessary for Stephen on the USMLE-Step 1. Dr. Culotta recommended that Stephen receive extended time, 100%, given the severity of his attention deficits. |
| 39. | Stephen submitted a report of Dr. Culotta's evaluation, in support of his request for reconsideration of request for accommodations. |
| 40. | Also in support of his request for reconsideration, Stephen submitted records of his elementary school, middle school and high school performance. |
| 41. | As detailed *supra*, those records detailed Stephen's difficulty with attention and organization from as early as first grade. Those records also detailed that Stephen qualified for and received accommodations from tenth through twelfth grade. Stephen requested that NBME consider these records as evidence that his educational disability had manifested itself earlier than college. |

42. In December 2009, Catherine Farmer again responded by letter on behalf of the NBME by denying Stephen's request for reconsideration.

43. Catherine Farmer determined, "the conclusions of your evaluators notwithstanding" and notwithstanding multiple contrary determinations, that Stephen did not meet the definition of an individual with a disability.

44. The letters from Catherine Farmer offered no specific information as to why she rejected multiple evaluations that diagnosed Stephen with a disability and outlined the major life activities which his disability impacted. The letters also offered no specific information as to why she departed from previous determinations that Stephen was an individual with a disability, and outlined appropriate accommodations as recommended by his psychologist.

45. In her December letter, Catherine Farmer offered no specific information as to why she refused to consider the multiple reports of Stephen's difficulties with attention and organization from as early as first grade, or the report that he qualified as a student with an educational disability and received accommodations from tenth grade through medical school.

46. Through his attorney, Stephen requested that NBME reconsider its decision. Catherine Farmer responded by letter on behalf of NBME. She refused to reconsider her previous decision, and again refused to provide Stephen with accommodations, again without explanation.

47. After reviewing NBME's refusal to offer any accommodations, Dr. Culotta concluded that without accommodations of extended time, Stephen will not

|   |   |
|---|---|
|   | demonstrate his understanding and application of the concepts and principles of health and disease that the USMLE-Step 1 purports to test. |
| 48. | Stephen has invested considerable time, effort and money into attending his first two years of medical school, and preparing for the USMLE-Step 1.  He has spent two year's tuition on the Howard University College of Medicine, and has spent months preparing for the USMLE-Step 1.  He is unable to continue his medical education until he passes the USMLE-Step 1, and would be required in the future to take, and pass, the additional two steps of the USMLE.  He has now hired legal counsel to advocate for his civil rights. |
| 49. | The arbitrary decision of the NBME and Catherine Farmer in denying Stephen's request for accommodations has caused him anxiety and stress over the interruption of his medical education and his future career plans. |

## CAUSES OF ACTION

**Violation of Title III of the ADA**

Plaintiff incorporates by reference the allegations contained in paragraphs 1-45.  By engaging in these actions, Defendants discriminated against Plaintiff on the basis of his disability in violation of Title III of the ADA, 42 U.S.C.§ 12181, and its implementing regulations, by

a. Failing to offer reasonable accommodations for the USMLE-Step 1 to Plaintiff;

b. Failing to properly consider the documentation offered by Plaintiff of his long history of learning disabilities and long history of academic accommodations;

c. Failing to make an individualized, case-by-case assessment of Plaintiff and his disability in regard to the requested accommodations;

d. Failing to provide Plaintiff with a specific, detailed explanation of the basis for the refusal to provide accommodations;

e. Failing to provide Plaintiff with accommodations on the USMLE-Step 1 which will allow Plaintiff's test results to accurately reflect his aptitude and achievement level, and not his disability; and

f. Acting in an arbitrary and capricious manner by failing to offer any explanation for denying Plaintiff's request for accommodations which are clearly needed and well-documented.

## JURY DEMAND

Plaintiff demands a trial by jury on all claims for which there is a right to a jury trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court:

A. ORDER the Defendants to provide the Plaintiff with the accommodations recommended by his psychologist, on the test date of his choice;

B. AWARD compensatory damages against the Defendants in an amount to be determined at trial to the Plaintiff;

C. AWARD punitive damages against the Defendants in an amount to be determined at trial to the Plaintiff;

D. FIND that Plaintiff is the prevailing party in this case and award attorney's fees, costs expenses, and other relief, at law or in equity, to which the Plaintiff may be entitled; and

E. GRANT any and all other relief that this Court deems just, proper, and equitable.

Respectfully submitted,

 /s/ Wayne D. Steedman
Wayne D. Steedman, Federal Bar No. 09474
Callegary & Steedman, P.A.
201 N. Charles Street, Ste. 1402
Baltimore, Maryland  21201
410-576-7606
Attorney for the Plaintiff

 /s/ James F. Silver
James F. Silver, Federal Bar No. 28571
Callegary & Steedman, P.A.
201 N. Charles Street, Ste. 1402
Baltimore, Maryland 21201
410-576-7606
Attorney for the Plaintiff

/s/ Judith A. Gran
Judith A. Gran, Federal Bar No.
Reisman Carolla Gran LLP
19 Chestnut Street
Haddonfield, New Jersey 08033
(856) 354-0061
Attorney for the Plaintiff

DATED:  March 5, 2010