UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| STEPHEN HARRISON COCKBURN, | : | |
| | : | |
| v. | : | CIVIL ACTION No. 10-1407-JS |
| | : | |
| NATIONAL BOARD OF MEDICAL EXAMINERS. | : | |

**MEMORANDUM IN SUPPORT OF DEFENDANT NATIONAL BOARD OF MEDICAL EXAMINERS' MOTION FOR SUMMARY JUDGMENT**

Plaintiff Stephen Cockburn ("Mr. Cockburn") alleges that the National Board of Medical Examiners ("NBME") violated the Americans with Disabilities Act ("ADA") by failing to provide him with extra testing time on the United States Medical Licensing Examination ("USMLE"). Mr. Cockburn claims to be entitled to more testing time than other examinees because he has been diagnosed as having learning disabilities and an Attention-Deficit/Hyperactivity Disorder ("ADHD"). The record evidence shows, however, that, even if those diagnoses were proper (and they were not), Mr. Cockburn does not experience any substantial limitations in his ability to read or learn and thus is not disabled within the meaning of the ADA. NBME is therefore entitled to summary judgment.

**STATEMENT OF FACTS**

**I.    THE NBME AND THE USMLE**

NBME is a not-for-profit organization that provides assessment services for the health professions. Decl. of C. Farmer ("Farmer Decl.") ¶ 3. Together with the Federation of State Medical Boards, NBME sponsors the USMLE, a standardized examination used to evaluate applicants' competence for medical licensure in the United States and its territories. *Id.* ¶ 4. The

90337419.4

USMLE is designed to assess a physician's ability to apply knowledge, concepts, and principles, and to demonstrate fundamental patient-centered skills, that constitute the basis of safe and effective patient care. *Id.*

In fairness to other examinees and to protect the integrity of USMLE scores, testing accommodations are only available for examinees who have disabilities as defined under the ADA and need accommodations when testing. *Id.* ¶ 5 & Ex. 1. All accommodation requests are individually reviewed, and reasonable accommodations are provided when warranted. *Id.*

## II.     MR. COCKBURN'S ALLEGED IMPAIRMENTS

Mr. Cockburn claims to suffer from a Reading Disorder and ADHD. According to the Diagnostic and Statistical Manual-IV-TR ("DSM-IV"), which provides the authoritative diagnostic criteria for these impairments,[1] the diagnosis of a Reading Disorder (315.00) requires that "[r]eading achievement, as measured by individually administered standardized tests of reading accuracy or comprehension, is substantially below that expected given the person's chronological age, measured intelligence, and age-appropriate education" ("Criterion A") ***and*** that "[t]he disturbance in Criterion A significantly interferes with academic achievement or activities of daily living that require reading skills" ("Criterion B"). Decl. of C. Mew ("Mew Decl.") Ex. 9.

A diagnosis of ADHD (314.00) requires a showing of six or more symptoms of inattention (as listed in the DSM-IV) that have persisted for at least 6 months to a degree that is maladaptive and inconsistent with the individual's developmental level. *Id.* Ex. 10. Impairment from the symptoms must be present in two or more settings, such as school (or work) and home.

---

[1] *See, e.g., United States v. Long*, 562 F.3d 325, 334 n.22 (5th Cir. 2009) (citing Fed. R. Evid. 201(b)); *Love v. LSAC*, 513 F. Supp. 2d 206, 210 (E.D. Pa. 2007).

*Id.* "ADHD's essential feature is a persistent pattern of inattention and/or hyperactivity-impulsivity…. To be diagnosed with ADHD, an individual must clearly evidence interference with developmentally appropriate social, academic, or occupational functioning." *Price v. NBME*, 966 F. Supp. 419, 422 (S.D. W. Va. 1997) (citing DSM-IV).

### III.   MR. COCKBURN'S REQUEST FOR ACCOMMODATIONS ON THE USMLE

Mr. Cockburn applied for accommodations on the USMLE in April 2009. Claiming to have a reading disability and a writing disability, he requested double the amount of testing time available to other examinees. Farmer Decl. Ex. 2. He did ***not*** claim to have ADHD, and he has since acknowledged that his alleged writing disability is irrelevant in the context of a computer-based, multiple-choice examination like the USMLE. Mew Decl. Ex. 7 at 134:15-135:1. In support of his request, Mr. Cockburn submitted personal statements; report cards and standardized test records; information from high school, college, and medical school personnel; and two psychological evaluations from David Filipowski, Ph.D. ("Dr. Filipowski"). Farmer Decl. Exs. 3-16.

As part of its normal process, NBME relies on independent professionals with expertise in the relevant disability to review accommodation requests and offer guidance. *Id.* ¶ 6. Mr. Cockburn's materials were reviewed by Richard L. Sparks, Ed.D. ("Dr. Sparks"), who specializes in special education and learning disabilities. *Id.* ¶ 7. Dr. Sparks concluded that the documentation provided did not demonstrate that Mr. Cockburn met the DSM-IV criteria for a Reading Disorder. *Id.* Ex. 17 at 2-4. Dr. Sparks noted that, although learning disabilities are lifelong conditions typically identified in elementary school, Mr. Cockburn was not diagnosed with any disability until 2005 (when Mr. Cockburn was 24 years old). *Id.* at 2-3. Dr. Sparks also noted that Dr. Filipowski's initial evaluation report (in 1998) did not diagnose any learning

disability.  *Id.* at 3.  He also explained that there was no evidence that Mr. Cockburn met Criterion B of the DSM-IV diagnostic criteria for a reading disorder because the documentation did not show significant interference with academic achievement or activities of daily living that require reading.  *Id.* at 4.

NBME sent a letter to Mr. Cockburn on August 31, 2009, denying his request for accommodations.  *Id.* Ex. 18.  NBME explained that the documentation he submitted, including his grades and his scores on standardized tests, did "not demonstrate impairments with respect to reading, writing or learning relative to most people in the general population."  *Id.*

Mr. Cockburn requested reconsideration.  In an undated letter received by NBME on October 30, 3009, Mr. Cockburn stated that a new psychologist, Dr. Culotta, had diagnosed him as having ADHD, as well as a reading disorder.  *Id.* Ex. 19.  Mr. Cockburn provided NBME with copies of Dr. Culotta's psychological evaluation and report cards with teachers' comments from kindergarten through eighth grade.  *Id.* Exs. 20-21.

NBME sent Mr. Cockburn's entire file to a second external evaluator, clinical psychologist Steven G. Zecker, Ph.D. ("Dr. Zecker"), for review.  *Id.* ¶ 8.  On the ADHD diagnosis, Dr. Zecker acknowledged comments made by Mr. Cockburn's elementary school teachers regarding inattentiveness and failure to complete assignments, but he noted that Mr. Cockburn's current self-assessment of attentional functioning yielded results in normal limits.  *Id.* Ex. 22 at 4.  Dr. Zecker also noted that Dr. Culotta's 2009 evaluation "contained no objective measure of attentional functioning."  *Id.*  As for the reading disorder diagnosis, Dr. Zecker noted that nothing in Mr. Cockburn's school records suggested any difficulties in early reading, "which would have been expected given that Reading Disorder is a neurodevelopmental condition with an onset in childhood."  *Id.*  It appeared to Dr. Zecker that the diagnosis of a reading disorder

depended extensively on Nelson Denny Reading Test (NDRT) results, but those results were in the average range, as were multiple other diagnostic reading scores.  *Id.*  Based on these and other factors, Dr. Zecker concluded that Mr. Cockburn's documentation did not support a need for accommodations.  *Id.* at 5.  By letter dated December 9, 2009, NBME denied Mr. Cockburn's request for reconsideration.  *Id.* Ex. 23.

## IV.     MR. COCKBURN'S BACKGROUND AND CLINICAL EVALUATIONS

### A.     Mr. Cockburn's Academic Record

In elementary school, Mr. Cockburn was primarily a B or C student.  Mew Decl. Ex. 1 at 11-17.  His report cards reflect that he always read at grade level, *id.*, and his results on the Woodcock Johnson achievement test from the sixth grade show reading scores well above grade level for both vocabulary and comprehension, *id.* at 24.  Although his teachers at times expressed concern about him staying on task, they did not raise issues about his reading abilities or suggest that any screening was necessary for a reading disorder.  *Id.* at 11-23.

Mr. Cockburn's grades slipped when he transitioned to middle school (he received D's in several classes), but they improved in the seventh grade and he earned all B's and C's in the eighth grade.  *Id.* at 5.

Mr. Cockburn attended an academically rigorous high school and took some advanced classes.  *Id.* Ex. 7 at 27:4-7; Farmer Decl. Ex. 5.  He was primarily a B or C student, with a few A's and D's.  Farmer Decl. Ex. 13. During high school, Mr. Cockburn played football and ran track, played the piano, was in the band, and was in a club.  Mew Decl. Ex. 7 at 26:5-27:3.

Mr. Cockburn did not receive any academic accommodations until the end of tenth grade. Farmer Decl. Ex. 7.  He was allowed extra time on classroom tests, *id.*; *see also* Mew Decl. Exs. 6 at 6; 7 at 70:10-71:1, even though Dr. Filipowski's 1998 evaluation had concluded that Mr.

Cockburn did not meet the diagnositic criteria for a learning disability and had also ruled out any attention disorders, *see* Farmer Decl. Ex. 14 at 3.

Mr. Cockburn attended North Carolina Central University (NCCU).  He majored in biology and minored in chemistry, and graduated *magna cum laude* in four years with a GPA of 3.46.  Mew Decl. Exs. 2 at 1; 3 at 2.  He was in the Academic Club and tutored other students.  *Id.* Ex. 7 at 28:17-29:2.  He participated in a biology honors society.  *Id.* at 73:7-9.  In addition to his coursework at NCCU, Mr. Cockburn studied Japanese at Duke University.  *Id.* at 89:4-6.

Mr. Cockburn did not formally request any accommodations in college.  Certain of his professors apparently allowed him extra time on tests and quizzes, *see* Farmer Decl. Ex. 8, Mew Decl. Ex. 6 at 6, but relevant records subpoenaed from NCCU contained only an email from one professor stating that he allowed Mr. Cockburn extra time on tests in two courses – but without requesting documentation that he qualified for extra time.  *Id.* Ex. 5.  Mr. Cockburn did not receive any other accommodations in college, such as a reader for classes or homework or assistance in taking notes during lectures.  *Id.* Ex. 7 at 31:13-19; 32:14-20; 71:2-7.

Mr. Cockburn took a post-graduate biochemistry class at the University of North Carolina and earned at B+, which placed him in the top 15% of the class.  *Id.* Ex. 4.  Mr. Cockburn was working at the time, and his instructor noted: "[B]iochemistry is daunting for any student, but my course covers two semesters of biochemistry in 5 weeks.  Stephen did a fine job of balancing his studies and professional life....  He demonstrated the ability to rapidly learn difficult subjects and integrate them into a broader intellectual framework."  *Id.*

At Howard University Medical School, Mr. Cockburn has received extended time on examinations and a quiet testing room.  Farmer Decl. Ex. 10; Mew Decl. Ex. 6 at 7.  Even in this

challenging academic environment, Mr. Cockburn does not need any accommodations to read his course materials, to do his homework and prepare for classes, or to study for exams. *Id.*

  **B.** **Mr. Cockburn's Performance on Standardized Tests**

The USMLE is a standardized test. It is therefore instructive to look at Mr. Cockburn's performance on other standardized tests. He has consistently performed in the average range or better, even when testing without extra testing time or other accommodations.

Mr. Cockburn took the California Achievement Test (CAT) in the third, fourth, fifth, and sixth grades. His reading scores on these tests, taken ***without*** accommodations, were better than 68, 46, 81, and 84 percent, respectively, of a national sample of same-grade students. Mew Decl. Ex. 1 at 4. In all of these years, his reading scores were in the average range and above.

Mr. Cockburn took state-wide, standardized end-of-grade tests after the sixth, seventh and eighth grades. His reading scores on these tests, taken ***without*** accommodations, were better than 39, 69, and 70 percent, respectively, of same-grade students. *Id.* at 3.

Mr. Cockburn took the PSAT examination without accommodations when he was a junior in high school. Farmer Decl. Ex. 4. He scored in the 44th percentile, well within the average range, on the verbal section of the exam. *Id.* He also took the ACT Assessment (used for college admissions) without accommodations during his junior year. *Id.* His score of 22 on the reading portion was around the 59th percentile – well above average. *See* www.act.org/news/data/98/t1.html.

Mr. Cockburn took the SAT in high school without accommodations, scoring 490 on the verbal section, a score in the average range. Mew Decl. Ex. 8 at 109:11-110:11. He took the SAT two more times, with extra testing time. Farmer Decl. Ex. 4. His total scores on the verbal

section of these tests were 510 and 500, respectively – average scores and only minor increases over his verbal score when he tested without accommodations. *See id.*

Mr. Cockburn took the Medical College Admissions Test (MCAT) four times. Mew Decl. Ex. 2 at 1. He tested three times without accommodations and his scores ranged from 14L to 16O. *Id.* He was later granted fifty percent extra testing time and scored 24M. *Id.* Mr. Cockburn has attributed his score improvement to factors other than extra testing time, explaining that he did not prepare adequately the first three times he took the MCAT, and that increased test preparation improved his scores. *Id.* Ex. 3 at 2, Ex. 7 at 119:15-19, 123:12-21.

### C.  Mr. Cockburn's Work Activities

Mr. Cockburn has been employed as a pharmaceutical technician at the University of North Carolina Hospital, as a test subject monitor for AAIPharma, Inc., as a martial arts instructor, and as a car salesman (among other jobs). Mew Decl. Ex. 2 at 8-12; Ex. 6 at 5. At UNC Hospital, he had to perform his responsibilities accurately and carefully, including distributing medications. *Id.* Ex. 7. at 43:3-19. At AAIPharma, his job was monitoring test subjects and accurately documenting relevant information. *Id.* at 37:10-38:17. He did not request or receive accommodations in any of these work settings. *Id.* Ex. 6 at 5-6.

### D.  Mr. Cockburn's Clinical Evaluations

#### 1.  Dr. Filipowski

Mr. Cockburn received his first psychological evaluation in 1998, when he was a junior in high school. Farmer Decl. Ex. 14. The evaluation was performed by Dr. Filipowski. *Id.* Mr. Cockburn's diagnostic test results were all in the average range, with the exception of two subtest results. *Id.* at 2-3. Dr. Filipowski concluded that Mr. Cockburn did not meet the formal

diagnostic criteria for the presence of a learning disability.  *Id.* at 5.  Likewise, he did not diagnose Mr. Cockburn with ADHD.  *Id.* at 4-5.

Dr. Filipowski evaluated Mr. Cockburn again in 2005, when Mr. Cockburn was 24 years old.  Mr. Cockburn told Dr. Filipowski that he wanted an evaluation to support extra testing time on the Medical College Admissions Test.  *Id.* Ex. 15 at 1-2.  Mr. Cockburn again scored in the average range on all of the measures of reading administered by Dr. Filipowski with the exception of two subtests.  *Id.* Ex. 17 at 3.  Nevertheless, Dr. Filipowski concluded that "Stephen meets the criteria for a DSM-IV Reading Disorder, 315.00," because his academic achievement measures were lower than expected "given his IQ scores and using the standard discrepancy formula."  *Id.* Ex. 15 at 7.  Dr. Filipowski specifically ruled out a diagnosis of ADHD.  *Id.* at 6 ("An analysis of the inattention, impulsivity and vigilance measures reveals that they are all within normal limits….").

### 2. Dr. Culotta

Mr. Cockburn was evaluated by Vincent P. Culotta, Ph.D. ABN ("Dr. Culotta"), a neuropsychologist and clinical psychologist, in 2009.  *Id.* Ex. 21.  Mr. Cockburn sought out this evaluation to support his request for accommodations on the USMLE.  *Id.* at 1-2; Mew Decl. Ex. 7 at 61:11-18.  Mr. Cockburn's diagnostic test results for intelligence (WAIS-IV) and achievement (WJ-III) were all in the average range.  Farmer Decl. Ex. 21 at 9-12.  Mr. Cockburn's scores on the Nelson Denny Reading Test were also in the average range, when compared to the proper pooled standardization sample.  *Id.* at 12; Ex. 23 at 2.  Mr. Cockburn scored below average on only two subtests, measuring executive functioning skills – the Rey Complex Figure Test and the Trailmaking Test.  *Id.* Ex. 21 at 13-14.  His self-report of current ADHD symptoms was in the normal range on the Barkley Current ADHD Symptoms Self-

Report Scales.  *Id.* at 15.  Nevertheless, Dr. Culotta diagnosed Mr. Cockburn with ADHD-Predominantly Inattentive Type and a Reading Disorder.  *Id.* Ex. 21 at 16.

    **E.**    **Mr. Cockburn's Current Functioning.**

In his deposition, Mr. Cockburn acknowledged that he does not have the functional limitations that are necessary to support an ADHD diagnosis.  *See generally* Mew Decl. Ex. 10.  He is focused when people talk to him.  *Id.* Ex. 7 at 12:9-15:15.  He gets along well with others.  *Id.*  He follows through on instructions at work and in medical school.  *Id.*  He is focused when interacting with patients.  *Id.*  He pays attention to detail and is careful.  *Id.*  He did not make careless mistakes in medical school, and he stayed focused for extended periods of time when working as a lab technician.  *Id.*  Mr. Cockburn does not believe that his ability to practice medicine will be affected by any of his claimed impairments.  *Id.* at 11:4-14.

## ARGUMENT

**I.**    **SUMMARY JUDGMENT IS APPROPRIATE IN THIS CASE.**

"Summary judgment is appropriate 'if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.'"  *Marshall v. Sisters of the Holy Family*, 399 F. Supp. 2d 597, 598 (E.D. Pa. 2005) (quoting FRCP 56(c)).  The Court must view the facts in the light most favorable to Mr. Cockburn, *id.*, but "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial."  *Scott v. Harris*, 550 U.S. 372, 378-80 (2007).  "The underlying purpose of summary judgment is to avoid a pointless trial in cases where it is unnecessary and would only

cause delay and expense." *Walden v. Saint Gobain Corp.*, 323 F. Supp. 2d 637, 641 (E.D. Pa. 2004).[2]

Courts frequently grant summary judgment in ADA cases based upon a finding that the plaintiff is not disabled within the meaning of the ADA. This includes cases involving claimed learning disabilities or ADHD, as here. *See, e.g., Wong v. Regents of the Univ. of California*, 410 F.3d 1052 (9th Cir. 2005); *Warshaw v. Concentra Health Servs.*, 719 F. Supp. 2d 484, 494-95 (E.D. Pa. 2010)("Nothing in the record…indicates that plaintiff is substantially…impaired in his ability to think or concentrate [because of his ADHD]."); *Dismore v. Seaford Sch. Dist.,* 532 F. Supp. 2d 656, 662-63 (D. Del. 2008); *Spychalsky v. Sullivan*, 2003 U.S. Dist. LEXIS 15704 (E.D.N.Y. 2003), *aff'd*, 2004 U.S. App. LEXIS 10246 (2d Cir. 2004).

## II.  PLAINTIFF IS NOT "DISABLED" WITHIN THE MEANING OF THE ADA.

To be disabled under the ADA, a person must have a "physical or mental impairment that substantially limits one or more major life activities…." 42 U.S.C. § 12102(2)(A). It is Mr. Cockburn's burden to prove that he is disabled. *See, e.g., Jayatilaka v. NBME*, 2011 U.S. Dist. LEXIS 5789, at *30 (C.D. Cal. 2011). He cannot meet that burden. Even if Mr. Cockburn met the applicable criteria for a diagnosis of a learning disorder or ADHD (and he does not),[3] his

---

[2] In this case, summary judgment will make it unnecessary to address at trial, through competing expert witnesses, the threshold question whether Mr. Cockburn meets the DSM-IV diagnostic criteria for a Reading Disorder or ADHD. NBME does not believe that he does (*see* n.3 *infra*), but has not contested the issue for purposes of this motion.

[3] As noted above, Mr. Cockburn has had three psycho-educational assessments done, by two psychologists. Dr. Filipowski diagnosed Mr. Cockburn with a Reading Disorder in 2005, but he concluded in 1998 that Mr. Cockburn does **not** meet the diagnostic criteria for that learning disability, and learning disabilities are lifelong conditions. Dr. Filipowski concluded in his 2005 report that Mr. Cockburn does **not** meet the diagnostic criteria for ADHD. In 2009, Dr. Culotta diagnosed Mr. Cockburn as having ADHD (the bulk of his report) and a Reading Disorder; however, neither diagnosis was consistent with applicable DSM-IV diagnostic criteria. For the ADHD diagnosis, Dr. Culotta disregarded Mr. Cockburn's performance on the Barkley's Self-

claimed impairments have not resulted in a substantial limitation in the major life activities of reading or learning. Therefore, he is not disabled within the meaning of the ADA and his claim fails as a matter of law. *See Kelly v. Drexel Univ.*, 94 F.3d 102, 108 (3d Cir. 1996) ("an impairment, standing alone, is not necessarily a disability as contemplated by the ADA") (affirming summary judgment); *Singh v. George Wash. Univ. Med. School,* 597 F. Supp. 2d 89, 97 (D.D.C. 2009)("a mere diagnosis of a learning disability...does not establish 'disability' under the ADA absent sufficient corroborative evidence from the patient's own experiences").

To be disabled within the meaning of the ADA, Mr. Cockburn must be substantially limited in his ability to read or learn as compared to the average person in the general population, *Kelly*, 94 F.3d at 105, not as compared to other medical school students, *see Singh v. George Washington Univ. Med. School,* 508 F.3d 1097, 1103 (D.C. Cir. 2007). The cases make clear that, as a matter of law, individuals who read and learn as well as or better than the average person in the general population are not disabled within the meaning of the ADA.[4]

---

Report Scales (no clinically significant current symptoms) and failed to administer a continuous performance test, which he has stated elsewhere is among "[t]he most helpful psychological testing in addressing AD/HD." Mew Decl. Ex. 11. Moreover, Dr. Culotta evaluated the impact of Mr. Cockburn's alleged symptoms in only one setting – school. *See* Farmer Decl. Ex. 21 at 16. A proper diagnosis of ADHD requires evidence of impairment in two or more settings – for example, school and home. Mew Decl. Ex. 10. And Dr. Culotta provided a Reading Disorder diagnosis even though Mr. Cockburn performed at the ***average or better*** level on ***all*** of the diagnostic reading tests administered by Dr. Culotta. Farmer Decl. Ex. 21 at 11-13. Like all of us, Mr. Cockburn simply has relative strengths and relative weaknesses, which is not enough to support a learning disability diagnosis. Mew Decl. Ex. 8 at 54:14-17; 55:1-4.

[4] The ADA was amended as of January 1, 2009, by the ADA Amendments Act ("ADAAA"). The ADAAA responded to a series of Supreme Court cases involving employees with physical disabilities and is intended to result in more individuals being covered by the ADA. However, under the ADAAA, a plaintiff must still show that he or she has a "substantial" limitation in a major life activity, and the existence of such a limitation is still determined by comparing the plaintiff's abilities to the abilities of the average person in the general population.

For example, in *Hopkins v. St. Joseph's Creative Beginning*, 2003 U.S. Dist. LEXIS 21033 (E.D. Pa. 2003), the plaintiff alleged that she suffered from learning disabilities that substantially limited her ability to read, learn, and work. Her psychological evaluation stated that plaintiff scored in the 18th percentile for Broad Reading and the 6th percentile for Reading Comprehension, and her reading comprehension skills were at a fifth grade level, *id.* at *12, but her evaluation did not suggest that she was "substantially impaired in any activity except taking difficult college courses," *id.* at *13. Noting that the plaintiff was working towards a college degree and had an extensive employment history, *id.* at *13-14, the court found that plaintiff did not have "a substantial impairment as compared to the average person" in the areas of reading and learning, *id.* at *12, and granted summary judgment to the defendant.

Similarly, in *Brief v. Albert Einstein Coll. of Med.*, 2010 U.S. Dist. LEXIS 55302 (S.D.N.Y. 2010), the court granted summary judgment on an ADA claim asserted by a student who had been diagnosed with ADHD by two professionals. As here, the plaintiff pointed to "instances in his life where he has been distracted," as well as "diagnostic tests" on which he "performed below the average person for his age group." *Id*. at *12-14. The court concluded, as a matter of law, that the evidence did not show a substantial limitation in learning or thinking so as to establish a disability under the ADA.

Mr. Cockburn is similar to the plaintiffs in *Hopkins* and *Brief*. His diagnostic evaluations show that he is not substantially limited in his ability to read as compared to most people.[5] And

---

[5] *See also Allegheny Health, Educ. & Res. Found. v. Kirkland*, 321 B.R. 776, 798 (W.D. Pa. 2005) (noting that three psycho-educational reports "graded [plaintiff's] various learning-related abilities at between low average and superior…and since 'average, or even slightly below average, is not disabled for purposes of the ADA,'...such reports constitute substantial evidence that, whatever her affliction, it did not operate to restrict her ability to learn in comparison to the average person in the general population.") (internal citation omitted) (summary judgment for

his academic records show that he has been able to read and learn well enough to proceed successfully through a rigorous high school, college, and medical school, and to perform in the average range or better on standardized tests.  "[A] student who learns as well as the average student does not have an impairment that substantially limits the major life activity of learning." *Centennial School Dist. v. Phil L.*, 2010 U.S. Dist. LEXIS 29041, *22 n.5 (E.D. Pa. 2010).

Extensive reading is necessary in college and medical school outside the context of test taking, yet Mr. Cockburn had no accommodations in those contexts.  Mr. Cockburn requested accommodations only to take tests.  But any limitations that he might have in this narrow context are not substantial and do not constitute a disability.  *See McGuinness v. Univ. of New Mexico Sch. of Med.*, 170 F.3d 974, 980 (10th Cir. 1998) ("An impairment limited to specific stressful situations, such as the mathematics and chemistry exams which trigger Mr. McGuinness' anxiety, is not a disability...."); *Singh*, 597 F. Supp. 2d at 95 ("Had [plaintiff] the ADA-defined disability that she claims to have, her achievement should have been more consistently limited.... It would not be enough to prove that she is substantially limited in...test-taking."); *cf. Ristrom v. Asbestos Workers Local 34*, 370 F.3d 763, 770 (8th Cir. 2004) ("The inability to pass a few highly specialized courses does not indicate an inability to learn under the ADA.").  "The specific task of taking timed tests...is not the kind of 'major life activity' protected under the ADA."  *Baer v. Nat'l Bd. of Med. Exam'rs*, 392 F. Supp. 2d 42, 47 (D. Mass. 2005).

As a matter of law, Mr. Cockburn cannot show that he is "substantially limited" in the major life activities of reading or learning.  *See, e.g., Costello v. Mitchell Public Sch. Dist. 79*,

---

defendant); *Brown v. Univ. of Cincinatti*, 2005 U.S. Dist. LEXIS 40798, at *31-32 (S.D. Ohio 2005) ("[N]ot every individual who scores below average or low-average on this particular neuropsychological battery can be deemed to be disabled…. [A]s plaintiff's situation

266 F.3d 916, 923-24 (8th Cir. 2001) (affirming summary judgment where plaintiff had average grades, advanced to the next grade each year, and was working toward her G.E.D.); *Kamrowski v. Morrison Mgmt. Specialist*, 2010 U.S. Dist. LEXIS 103290,*23-29 (S.D.N.Y. 2010)("Plaintiff has failed to raise a genuine issue of material fact regarding whether her dyslexia or attention deficit disorder substantially impaired a major life activity, including her abilit[y] to read"); *Butler v. Bloomington Pub. Schools*, 2010 U.S. Dist. LEXIS 10517, *11-13 (D. Minn. 2010) (plaintiff who "graduated from high school and vocational schools" was not substantially limited in learning as a matter of law); *Marshall v. Sisters of the Holy Family*, 399 F. Supp. 2d 597, 603 -04 (E.D. Pa. 2005) (student with ADHD was not substantially limited in learning or other major life activities where he was very successful in school); *Dorn v. Potter*, 191 F. Supp. 2d 612, 623 (W.D. Pa. 2002)("plaintiff has failed to show that his alleged learning disability substantially limits a major life activity, including the activity of learning itself.").

Because Mr. Cockburn is not disabled within the meaning of the ADA, it was entirely appropriate for NBME to deny his request for testing accommodations on the USMLE:

> [I]t is clear that [the National Board] followed its standard procedure when it determined that appellant was not entitled to a test accommodation. Its procedures are designed to ensure that individuals with *bona fide* disabilities receive accommodations, and that those without disabilities do not receive accommodations that they are not entitled to, and which could provide them with an unfair advantage when taking the medical licensing examination. As administrator of the national exam used by a number of states for licensing medical doctors, the National Board has a duty to ensure that its examination is fairly administered to all those taking it.

*Powell v. Nat'l Bd. of Med. Examiners,* 364 F.3d 79, 88-89 (2d Cir. 2004)(affirming summary judgment for defendants).

---

demonstrates, an individual can [still] succeed academically through at least the college level….") (summary judgment granted for defendant).

## **CONCLUSION**

The Court should enter summary judgment in favor of NBME.

                                       Respectfully submitted,

                                          /s/ Robert A. Burgoyne
                                       Robert A. Burgoyne
                                       Caroline M. Mew
                                       Fulbright & Jaworski L.L.P.
                                       801 Pennsylvania Avenue, NW
                                       Washington, DC  20004-2623
                                       Telephone: (202) 662-0200
                                       Fax:  (202) 662-4643
                                       rburgoyne@fulbright.com
                                       cmew@fulbright.com

**CERTIFICATE OF SERVICE**

     I hereby certify that the foregoing document has been filed electronically and is available for viewing and downloading from the ECF system.  Counsel of record for plaintiff were served through the Court's electronic case filing system.

                                                     _____/s/ Robert A. Burgoyne_____