# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

STEPHEN HARRISON COCKBURN,     :
                                                :
        v.                            :        CIVIL ACTION No. 10-1407-JS
                                                  :
NATIONAL BOARD OF MEDICAL      :
EXAMINERS.

## DECLARATION OF CATHERINE FARMER

## <u>EXHIBITS 12-19</u>

# EXHIBIT 12

RECEIVED

APR 22 2009

Disability Services

APR 22 2009

Disability Services

the M.C.A.T committee,

This packet is in regard to receiving accomodations for the 2006 M.C.A.T in April. In the pa 2 years I have taken the M.C.A.T three times. Unfortunat -ry score that I had earned was below a 20. Clearly, a score this low is not enough to get into any medical shool in the country. Given the G.P.A. that I earned i college, I realized that something was wrong. Throughout my academic carrer from highschool until now, I have been given accomodations. These accomodations were on th basis of my first psychiatric evaluation done by Dr. Filips In my first evaluation, I did not meet any of the criteria to have a formal learning disability. However, ther neccesary was enough evidence that showed it me longer to read and process information than most. This past summer, I went back to Dr. Filipowski and was re-evaluated. The 2nd test proved that I do have a reading and writing disability Under the Americans for Disabilities Act, I meet the criteria for a DSM-IV Reading Disorder, 315.00. Basicly it takes me much longer to read and process information then the normal/regular In tests such as the M.C.A.T where time and reading pla suh a crucial factor, this clearly puts me at a substantia disadvantage compared to other students. Over the past several months I have taken mock M.C.A.T's and have found that double time is adequate. Therefore, I am

the M.C.A.T.

This packet contains the following:
1. High school and college transcript
2. 1st and 2nd Psychological Evaluations
3. Letter from acedemic skills High school coordin
4. Letter from Acedemic support (college)
5. S.A.T. scores
6. A.Mc.A.S acedemic record

If you have any questions please contact me anytime
At (919) 368-6904 or (919) 876-7721. Or Email me at
Lung27@Hotmail.com.

Stephen H. Cockburn

RECEIVED

APR 2 2 2009

Disability Services

# EXHIBIT 13

# ASSOCIATION OF AMERICAN MEDICAL COLLEGES

January 25, 2006

Stephen Cockburn
7209 Fontana Pl.
Raleigh, NC 27615

1037310    5-220-777-6
MCAT-Testing Accomodatie

*Sent by email to lung27@hotmail.com*
*And by first class mail*

Dear Mr. Cockburn:

Your request for accommodation for the April 22, 2006 administration of the Medical College Admission Test (MCAT) was received January 17, 2006, and your documentation has now been carefully reviewed.  You requested extended time (double time), and a separate room, on the basis of a reading disorder.  Your file consists of your request; psychological evaluations dated June 2005 and January/April 1998 from David Filipowski, Ph.D.; a transcript from Ravenscroft School dated June 1999; PSAT/NMSQT, ACT, and SAT test records; a letter dated September 16, 2005 from Janet Smith, M.Ed. of Ravenscroft School; a letter dated December 19, 2005 from Dr. James B. Fuller, Director at North Carolina Central University; and an academic record and transcript from North Carolina Central University.

Based upon the data and documentation presented, we are prepared to provide extended time (one and one-half) with seating in a separate room (there may be one or more individuals with similar accommodation present).  The documentation does not support the requested accommodation for double time.

Please be assured that the Association of American Medical Colleges and ACT are committed to providing reasonable accommodations to individuals with disabilities.  We must also be mindful to protect the integrity of the entire assessment process.  Multiple viewpoints need to be considered and balanced.  We carefully consider the issues of fairness for each applicant requesting accommodations, as well as for all other participants in the assessment.

A request for reconsideration must be received by March 17, 2006 and must be presented in writing.   Such a request should contain new and additional information not previously considered.  Should you have additional information that was not included in the initial review you may fax this information to my attention at 319/337-1122.  If you have other questions, I can be reached at 319/337-1469.  If we receive nothing further by March 17, 2006, you will be registered with the accommodation noted above.

Sincerely,

*Marily Haight*

Marilyn Haight, ABD, M.Ed.
Educational Psychologist
Consultant, Accommodated Testing

RECEIVED

APR 2 2 2009

Disability Services

MCAT Program Office
301 ACT Drive, P.O. Box 4056
Iowa City, Iowa  52243-4056
(319) 337-1357
www.aamc.org/mcat

# MCAT
MEDICAL COLLEGE ADMISSION TEST

# EXHIBIT 14



**Silber Psychological Services, P.A.**

1004 Dresser Court, Suite 103
Raleigh, North Carolina 27609
Telephone: (919) 876-5658

975 Walnut Street, Suite 361
Cary, North Carolina 27511
Telephone: (919) 481-9012

## PSYCHOLOGICAL EVALUATION                    CONFIDENTIAL

**NAME:** Stephen Cockburn
**BIRTHDATE:**
**C.A.:** 17 years

**SCHOOL:** Ravenscroft Upper School
**GRADE:** 11th
**EVALUATION DATES:** 1/31/98; 4/7/98

## ASSESSMENT PROCEDURES:
Wechsler Adult Intelligence Scale-Third Edition (WAIS-III)
Woodcock Johnson Tests of Achievement-Revised (WJ-R)
Wide Range Assessment of Memory and Learning (WRAML)
Conners' Continuous Performance Test (CPT)

## BACKGROUND INFORMATION:
Stephen Cockburn is a 17 year old junior at the Ravenscroft Upper School who was referred for an evaluation by Janet Smith, the academic skills counselor at Ravenscroft. Stephen's parents reported that they feel as though he will often know the material presented in the classroom but then has trouble completing tests in a timely fashion. He is generally described by teachers as a well-behaved youth who has some difficulty following through on tasks and following instructions. His parents also reported that he tends to be a very hard worker but they recall several comments over the years from teachers regarding his organizational skills.

Janet Smith completed the Woodcock Johnson at Ravenscroft, the results of which are presented herein.

## BEHAVIORAL OBSERVATIONS:
Stephen readily agreed to participate in the assessment process. He came to the testing sessions casually attired, evidenced excellent personal hygiene and appeared his stated age. He was friendly and cooperative from the onset and worked diligently on all of the presented tasks. He did ask to have many items repeated and on the Applied Problems subtest from the Woodcock Johnson needed to re-read several items. On at least two separate tasks, he had difficulty following instructions. Overall, an adequate testing rapport was established and the results are likely to be a valid estimate of his current level of psychological functioning.

RECEIVED

APR 2 2 2009

Disability Services

## TEST RESULTS:

### WAIS-III:  (Mean is 100; Average Range is 90-110)

|  | Standard Score | Percentile | Ability Range |
|---|---|---|---|
| VERBAL IQ | 112 | 79 |  |
| PERFORMANCE IQ | 97 | 42 | High Average |
| FULL SCALE IQ | 105 | 63 | Average |
|  |  |  | Average |
| VERBAL COMPREHENSION | 114 | 82 |  |
| PERCEPTUAL ORGANIZATIONAL | 86 | 18 | High Average |
| WORKING MEMORY | 106 | 66 | Low Average |
| PROCESSING SPEED INDEX | 96 | 39 | Average |
|  |  |  | Average |

### WAIS-R Subtests:  (Mean is 10; Average Range is 7-13)

| Verbal | Scaled Score | Performance | Scaled Score |
|---|---|---|---|
| Vocabulary | 14 | Picture Completion | 6 |
| Similarities | 8 | Digit Symbol | 10 |
| Arithmetic | 12 | Block Design | 8 |
| Digit Span | 10 | Matrix Reasoning | 9 |
| Information | 16 | Picture Arrangement | 15 |
| Comprehension | 12 | (Symbol Search) | ( 9 ) |
| (Letter-Number Sequencing) | (11) |  |  |

### WOODCOCK JOHNSON (WJ-R): (Norms Based on Age)

|  | Standard Score | Percentile |
|---|---|---|
| **BROAD READING** | **99** | **48** |
| Letter Word Identification | 101 | 71 |
| Passage Comprehension | 97 | 41 |
| **BROAD MATH** | **112** | **79** |
| Calculation | 118 | 89 |
| Applied Problems | 103 | 58 |
| **BROAD WRITTEN LANGUAGE** | **96** | **39** |
| Dictation | 93 | 31 |
| Writing Samples | 102 | 55 |

RECEIVED

APR 2 2

Disability Service

**BROAD KNOWLEDGE** 109 72
  Science 99 46
  Social Studies 113 81
  Humanities 112 78

## WRAML INDICES: (Mean is 100; Average Range is 90-110)

| | Standard Score | Percentile |
|---|---|---|
| Verbal Memory Index | 85 | 16 |
| Memory Screening Index | 89 | 23 |

## WRAML Subtests: (Mean is 10; Average Range is 7-13)

| Verbal Scale | Scaled Score | Visual Scale | Scaled Score |
|---|---|---|---|
| Story Memory | 6 | Picture Memory | 9 |
| Sentence Memory | 8 | Design Memory | 11 |
| Number/Letter Memory | 9 | | |

Learning Scale:

Verbal Learning                8

RECEIVED

APR 2 2 2009

Disability Services

## TEST INTERPRETATIONS:

A Full Scale IQ score on the WAIS-III of 105 places Stephen in the Average range of intellectual functioning and at the 63rd percentile rank. There was a great deal of scatter or variability in Stephen's performance on the WAIS-III subtests. In addition, there was a considerable amount of intra-subtest scatter suggesting that the scores are most likely a minimal estimate of his potential. His verbal comprehension skills were clearly superior to his perceptual organizational skills. His Processing Speed Index was within normal limits as was his Working Memory Index. In terms of his performance on the individual subtests, Stephen had the greatest difficulty with the Picture Completion subtest. He had difficulty discriminating from essential from non-essential details in his environment. On the Verbal subtests, his weakest performance was on the Similarities subtest. This suggests some problems with verbal abstract reasoning. Non-verbal abstract reasoning skills were at a similar level but were consistent with his overall Performance IQ scores. Relative strengths were evident on the Vocabulary and Information subtests. Both of those assessed long-term memory and indicate that Stephen has indeed stored a great deal of information. He also performed very well on the Picture Arrangement subtest indicating that he has an excellent ability to synthesize and integrate subtle social cues. His general understanding of social mores and conventions was quite good. Overall, the patterns of scores suggest that Stephen is likely to have some difficulty in subject areas that require greater active reasoning skills.

RECEIVED

APR 2 2 20..

Disability Services

Stephen's performance on the Woodcock Johnson, an individually administered test of academic achievement, was generally within the range expected given his IQ scores. His scores on the Reading and Written Language subtests were slightly weaker than expected given his excellent verbal comprehension skills with the greatest difficulties being in the area of mechanics or basic skills of written language. His broad knowledge skills and mathematical abilities were areas of relative strength. He demonstrated strong rote calculation skills but was slightly weaker on word problems or applied mathematical tasks.

Stephen's screening index from the WRAML, an assessment devise utilized to measure memory and learning and his Verbal Memory Index were both significantly lower than expected. It was clear that he had the greatest difficulty with the recall of more complex auditory presented information. His performance was stronger on tasks in which the information was presented visually. He also performed better as the size of the chunk of the information decreased such that he had the greatest recall with single letters and digits. On the Verbal Learning subtest, a task which presents the student with a list of 16 words that are presented on four consecutive trials, Stephen's performance was far below expected limits on the first and second trials and then increased significantly by the third and fourth trials. He was also able to sustain that high level of recall following a delay and thus it appears that when information is repeated he is able to successfully store that information in long-term memory. In general, he is likely to have the greatest difficulty with recall of information that is more complex in nature and presented without any repetitions.

On the CPT, a computerized administered visual tracking task utilized to measure sustained attention and concentration, Stephen's overall index was within normal limits; however, he did exhibit two types of errors which are typically not seen in the general student population. Specifically, he tended to give slower responses at the end of the test then at the beginning of the test indicating some difficulty sustaining attention and also gave more variable responses at the end of the test then at the beginning, a pattern also suggesting some problems with sustaining attention. The overall response protocol does not strongly suggest an attention problem but continued observation and the gathering of information from teachers is clearly recommended.

## SUMMARY AND RECOMMENDATIONS:

Stephen Cockburn is a 17 year old junior at the Ravenscroft Upper School who was referred for a psychological evaluation. In brief, he was found to be functioning in the Average range of intelligence with comprehension abilities superior to his perceptual organizational and visual-spatial skills. His academic achievement levels were generally within the range expected given his IQ scores but, he did exhibit a mild relative weakness on the Dictation subtest suggesting difficulties with the mastery of the basic skills of written language. Significant difficulties were evident on the Verbal Memory Index from the WRAML such that he is likely to have problems with the processing of more complex auditorily presented information.

Although the overall index from the Conners' CPT was not significant, there were several features in the protocol suggesting that Stephen has problems sustaining attention and concentration over time. Stephen's parents reported that from an early age that he had difficulty with multiple level commands, organizational skills in school, and problems following instructions. In general, the present results suggest that he has some problems with the efficient processing of information.

**The recommendations based on the testing are as follows:**

1.  Although Stephen does not meet the formal diagnostic criteria for the presence of a learning disability, considerable evidence exists to suggest that he has difficulty with the efficient storing and processing of new information.  Consideration should be given to providing him with extra time on classroom tests and assignments.

2.  In classes that use primarily a lecture format, Stephen should be either hooked up with a study buddy from whom he can borrow notes and assignments or should be using a tape recorder to record the class so that he can replay it at his own pace at a later time.

3.  If he has not already done so, given his difficulty with basic skills, Stephen should be instructed in the use of word processing so that he can access both the spell-check and grammar-check features available on most programs.

4.  Stephen clearly does better with the recall of information that is presented in smaller chunks that are frequently repeated.  As he approaches reading assignments, he should be using a strategy which focuses on consolidating information.  First, he should attempt to predict what it is that the author is going to convey.  Next, as he reads though each paragraph, he should be underlining the key words and noting in the margin main ideas.  At the end of each paragraph, he should attempt to summarize in his own words what has just been reported.  Finally, at the end of each assignment, Stephen should attempt to generate questions that the teacher might ask about the material and then respond to those questions.

5.  According to reports from teachers and parents, Stephen is clearly a motivated student who is interested in performing well.  Given his persistent complaints of difficulties with attention and concentration and the report of those symptoms as being present from a very early age, Stephen and his parents may want to give some consideration to the gathering of additional data from his current teachers.  Once that data is compiled, if the results provide additional information regarding the presence of attentional problems, those results and the present report should be shared with his family physician to determine whether or not a pharmacological intervention will be helpful.

Dave Filipowski, Ph.D.
Licensed Psychologist

RECEIVED

APR 22

Disability Services

DF/ly

# EXHIBIT 15

**Silber Solutions, P.A.**
www.silbersolutions.com

1037315      5-220-777-6
2005 (Filipowski)-Evalua

1004 Dresser Court, Suite 103
Raleigh, North Carolina 27609
Telephone: (919) 876-5658

1340 S.E. Maynard Road, Suite 201
Cary, North Carolina 27511
Telephone: (919) 481-9012

**CONFIDENTIAL**

# PSYCHOLOGICAL EVALUATION

**NAME:** Stephen H. Cockburn
**BIRTHDATE:**
**C.A.:** 24

**SCHOOL:** NC Central University
**GRADE:** College Graduate
**EVALUATION DATES:** 6/16, 6/20 & 6/30/05

**TESTS ADMINISTERED:**
Wechsler Adult Intelligence Scale-Third Edition (WAIS-III)
Woodcock Johnson Tests of Achievement-Third Edition (WJ-III-ACH)
Wechsler Memory Scale-Third Edition (WMS-III)
Nelson-Denny Reading Test
Conners' Continuous Performance Test-Second Edition (CPT-II)

**BACKGROUND INFORMATION:**
Stephen Cockburn is a 24-year-old college graduate who is returning to our practice for an updated psychoeducational evaluation. Stephen was last evaluated at our practice as a junior in high school in the spring of 1998. He had been referred at that time by the academic skills counselor at Ravenscroft Upper School who reported that from the time that Stephen started with them in the 9th grade that he was consistently described by teachers as knowing the material but then having difficulty completing things in a timely fashion. They had already informally been granting him extra time on classroom tests and assignments, finding that this accommodation was very helpful. The academic skills counselor was aware that he was going to be taking the Scholastic Achievement Test and she was particularly interested in documenting his difficulties so that they could request accommodations. That earlier assessment did indeed identify difficulties with the efficient processing and storing of information. His parents also reported that from a very early age that he had had difficulty with multiple level commands, organizational skills in school, and following through on instructions. He did not meet the formal diagnostic criteria for an Attention Deficit Hyperactivity Disorder but did exhibit significant difficulties on a memory screening task and a verbal memory task. Stephen did indeed qualify for extra time on the SATs and was also given the option of extra time on all of his tests at North Carolina Central University. He reported that he initially tried to take several courses without taking the extra time but after having some poor results in his first series of tests he decided to ask several of his professors for extra time. This resulted in a dramatic improvement in his performance and indeed he ended up graduating from NCCU with a grade point average around a 3.5 on a 4.0 scale. Stephen is interested in applying for medical school and has taken the MCATs on several occasions without any accommodations. When he asked about taking the MCATs in a

RECEIVED

APR 2 2 2009

Disability Services

non-standardized format he was informed that there was no formal disability identified and if he were to be considered for the accommodations this would need to be documented.

In addition to the formal assessment, a structured interview was conducted with Stephen to rule out any additional difficulties.  Stephen reported that he is currently working as a pharmacy technician at the University of North Carolina Hospital System and that prior to that he had been in a contract position with a pharmaceutical company.  Other than being concerned about his inability to be accepted to medical school, he presented as a psychologically well adjusted adult who is goal-oriented and committed to pursuing a medical school career.

## BEHAVIORAL OBSERVATIONS:

Stephen was an enthusiastic participant in the assessment process.  He was interested in developing a better understanding about what things were getting in his way and was clearly invested in the assessment process.  He was friendly and cooperative from the onset and worked diligently on all of the presented tasks.  As had been observed in the past, Stephen was indeed a very slow processor.  It took him two hours and five minutes to complete the WAIS-III and fifty minutes to complete just the applied portions of the Woodcock Johnson – Third Edition, namely Passage Comprehension, Writing Samples and Applied Problems.  There was a direct relationship between the complexity of the tasks and Stephen's speed of performance such that increasing complexity of task demands was associated with slower processing speed.  Overall, an excellent testing rapport was established and the results are likely to be a valid estimate of his current level of psychological functioning.

## TEST RESULTS:

### WAIS-III:  (Mean is 100; Average Range is 90-110)

|  | Standard Score | Percentile | Classification |
|---|---|---|---|
| FULL SCALE IQ | 114 | 82 | High Average |
| VERBAL IQ | 127 | 96 | Superior |
| PERFORMANCE IQ | 98 | 45 | Average |
|  |  |  |  |
| VERBAL COMPREHENSION INDEX | 124 | 95 |  |
| WORKING MEMORY INDEX | 121 | 92 |  |
| PERCEPTUAL ORGANIZATION INDEX | 93 | 32 |  |
| PROCESSING SPEED INDEX | 103 | 58 |  |

### WAIS-III Subtests:  (Mean is 10; Average Range is 8-12)

| Verbal Comprehension | Scaled Score | Perceptual Organization | Scaled Score |
|---|---|---|---|
| Vocabulary | 14 | Picture Completion | 8 |
| Similarities | 13 | Block Design | 8 |
| Information | 16 | Matrix Reasoning | 11 |
| Comprehension | 16 | Picture Arrangement | 10 |

2

RECEIVED

APR 2 2 2009

Disability Services

| Working Memory | Scaled Score | | Processing Speed | Scaled Score |
|---|---|---|---|---|
| Arithmetic | 12 | | Symbol Search | 9 |
| Digit Span | 14 | | Digit Symbol-Coding | 12 |
| (Letter-Number Sequencing) | 15 | | | |

**WMS-III:** (Mean is 100; Average Range is 90-110)

| Primary Indexes | Index Score | Percentile |
|---|---|---|
| **General Memory** | **118** | **88** |
| Auditory Immediate | 97 | 42 |
| Visual Immediate | 121 | 92 |
| Immediate Memory | 110 | 75 |
| Auditory Delayed | 108 | 70 |
| Visual Delayed | 125 | 95 |
| Auditory Recognition Delayed | 110 | 75 |
| Working Memory | 124 | 95 |

**WMS-III Subtests:** (Mean is 10; Average Range is 8-12)

| | Index Score |
|---|---|
| Logical Memory I Recall | 11 |
| Faces I Recognition | 13 |
| Verbal Paired Associates I Recall | 8 |
| Family Pictures I Recall | 14 |
| Letter Number Sequencing | 15 |
| Spatial Span | 13 |
| Logical Memory II Recall | 13 |
| Faces II Recognition | 15 |
| Verbal Paired Associates II Recall | 10 |
| Family Pictures II Recall | 13 |
| Auditory Recognition Delayed | 12 |

3

RECEIVED

APR 2 2 20

Disability Services

Auditory Processing Subtest Total Scores
Logical Memory I
   First Recall Total Score              11
   Learning Slope                    8
Verbal Paired Associates I
   First Recall Total Score              8
   Learning Slope                   12
Logical Memory II
   Percent Retention             14
Verbal Paired Associates II
   Percent Retention              9

|  | Percentile |
|---|---|
| Auditory Process Composite Scores | |
| Single Trial Learning | 44 |
| Learning Slope | 52 |
| Retention | 70 |
| Retrieval | 65 |

**WJ-III:**  (Norms Based on Age)

|  | Standard Score | Percentile |
|---|---|---|
| **TOTAL ACHIEVEMENT** | 93 | 33 |
| **BROAD READING** | 86 | 18 |
| Letter-Word Identification | 94 | 34 |
| Passage Comprehension | 96 | 39 |
| **BROAD MATH** | 102 | 56 |
| Calculation | 111 | 76 |
| Applied Problems | 96 | 40 |
| **BROAD WRITTEN LANGUAGE** | 99 | 46 |
| Spelling | 100 | 51 |
| Writing Samples | 106 | 65 |
| **BASIC READING SKILLS** | 99 | 48 |
| Word Attack | 110 | 75 |
| **READING COMPREHENSION** | 98 | 45 |
| Reading Vocabulary | 100 | 50 |

RECEIVED

APR 2 2 20

Disability Services

| | | |
|---|---|---|
| MATH CALCULATION SKILLS | 108 | 70 |
| WRITTEN EXPRESSION | 98 | 44 |
| ACADEMIC SKILLS | 100 | 51 |
| ACADEMIC FLUENCY | 83 | 12 |
|   Reading Fluency | 80 | 9 |
|   Math Fluency | 100 | 49 |
|   Writing Fluency | 96 | 39 |
| ACADEMIC APPLICATIONS | 97 | 42 |

**Nelson-Denny Reading Test:** (Norms Based on Spring Semester Senior Year of College)

| | Raw Score | Percentile | Grade Equivalent |
|---|---|---|---|
| TOTAL | | 14 | 13.4 |
| Vocabulary | | 32 | 15.0 |
| Comprehension | | 6 | 10.1 |
| Reading Rate | 123 wpm | 2 | |

**CPT-II Results:**

Non-Clinical, 54.07% Confidence Index

**TEST INTERPRETATIONS:**
A WAIS-III Full Scale IQ score of 114 places Stephen at the 82nd percentile rank and in the high average range of intellectual functioning. His verbal comprehension skills were far superior to his perceptual organizational or visual-spatial skills. Relative to other adults, Stephen demonstrated an above average range of vocabulary skills, an excellent understanding of social mores and conventions, and an excellent fund of general knowledge. Abstract verbal reasoning skills were also above average as was his ability to freely recall a string digits and letters. On the performance tasks, Stephen had difficulty rapidly and accurately discriminating essential from non-essential details as well as difficulties breaking down and synthesizing complex geometric designs. Visual-graphic speed, learning and persistence was within normal limits as was his ability to synthesize and integrate visually presented subtle social cues. In general, the results of the WAIS-III suggest that Stephen is a bright man who should compare favorably to his same-aged peers.

On the Woodcock Johnson, an individually administered test of academic achievement, Stephen's overall achievement level was below that expected given his IQ scores. He had the greatest difficulty on the tasks comprising the academic fluency composite with his slowest performance being in the area of reading. An overall score on the reading composite of 86 placed him at the 18th percentile rank and 28 points below the level expected given his Full Scale IQ score. His word attack or phonics skills were within normal

RECEIVED

APR 2 2 2009

Disability Services

RECEIVED

APR 2 2 2009

Disability Services

limits and he also performed within the average range on a series of tasks measuring reading comprehension. Written language and mathematic skills were also within the average range. His mastery of basic math calculations approached the high average range whereas he performed slightly weaker on tasks requiring general mathematic reasoning skills. In general, when compared to others at his age level, Stephen's academic skills and his ability to apply those skills are both within the average range whereas his fluency with academic tasks is in the low average range.

The Nelson-Denny Reading Test was administered to assess Stephen's ability to perform reading tasks under time pressure. His Total Reading score fell at the 14th percentile rank which translates to a standard score of approximately 85. His performance on the vocabulary task was at the low end of the average range whereas his performance on the reading comprehension measure, a task that required him to read paragraphs and then answer questions about those paragraphs was far below average. A Reading Rate of 123 words per minute was at the 2nd percentile rank for college seniors and at a level that was far below expectations given his IQ scores. The Nelson-Denny Reading Test confirms that Stephen's reading skills, particularly under the pressure of time are limits far below the expected level both for his age as well as for his intellectual abilities.

The Wechsler Memory Scale – Third Edition was utilized to measure Stephen's memory and learning skills. Stephen had the greatest difficulty with the recall of orally presented information that was not thematically or semantically related and was slightly more complex in nature. As indicated by his General Memory score of 118 which was in the high average range, when information is repeated Stephen's ability to recall that information increases significantly. He also demonstrated stronger visual than auditory memory. His weakest performance was on the verbal paired associates recall task. This task pairs a list of eight words with eight non-semantically related words and then repeats those words on consecutive trials. Stephen did generate a learning curve such that repetition of the information was useful but his overall level of performance on the task continued to be well below expectations, particularly in light of his superior verbal IQ score. The logical memory tasks present two brief stories, one of which is presented twice. The combination of context or meaning along with repetition clearly improved his ability to recall verbally or orally presented information.

On the Connors CPT-II a computer administered visual tracking task that is utilized to assess attention and concentration, Stephen obtained a Non-Clinical Confidence Index of 54.07% indicating that the results better match a non-clinical than a clinical profile. A Confidence Index of 50 would provide no decision on the basis of the result and thus the determination of a non-clinical profile is statistically accurate but not very strong. An analysis of the inattention, impulsivity and vigilance measures reveals that they are all within normal limits suggesting that if any attentional difficulties are present they do not fit any classic or typical patterns of attention problems. Only one overall measure was mildly atypical that being on his response style. Individuals who score at this level respond more freely to make sure that they respond to most or all of the targets presented and they tend to be less concerned about mistakenly responding to a non-target. This was the only atypical measure indicating

6

that Stephen was generally fairly accurate in his performance on the CPT-II and that there was no decline in his ability to sustain attention and concentration over time.

**SUMMARY AND RECOMMENDATIONS:**
Stephen Cockburn is a 24-year-old college graduate who was referred for a psychoeducational evaluation. In brief, he was found to be functioning in the high average range of intelligence with verbal abilities superior to his more practical or visual-spatial skills. On the academic measures, a significant deficiency was noted in the area of reading with an overall score placing him far below expectations given his superior Verbal IQ score. Difficulties with fluency and speed were noted throughout.  He also demonstrated a mild relative weakness in the area of immediate auditory memory such that he has difficulty with the storage and recall of information that is not semantically or thematically related, particularly when that information is more complex.  In general, Stephen's academic achievement measures were well below the level expected given his IQ scores and using the standard discrepancy formula he can be qualified for Learning Disabled in the areas of Reading and Written Language.  Using the stricter criteria associated with the Americans for Disability Act, Stephen meets the criteria for a DSM-IV Reading Disorder, 315.00, which significantly impairs his ability to perform on timed reading tasks.

The recommendations based on the testing are as follows:

1. Stephen should continue to be provided with accommodations of extra time on all classroom tests, assignments and also on standardized testing and evaluations.  As much as is possible untimed administrations would be helpful; however, when this is not feasible, at minimum time and a half should be provided.  A measured Reading Rate of 123 words per minute places him at the 2nd percentile rank and clearly at a significant disadvantage relative to his peers.

2. Cramming is not likely to be a useful device for Stephen and instead he should keep up a steady course of rehearsal and repetition over the course of each semester.  When he is in classes that use primarily a lecture format or is in involved in work settings that demand the rapid and efficient processing of auditory information, he should either be using a hand held tape recorder or taking notes in a short-handed fashion that allows him to focus on the key points or the main ideas being presented.  Furthermore, as much as is possible, he should be attempting to visualize novel information and would do much better with the processing of information as presented in visual representations such as graphs, charts, flow charts, etc.

RECEIVED

APR 2 2 2009

Disability Services

David Filipowski, Ph.D.
Licensed Psychologist

DF/tm

7

# EXHIBIT 16

**Silber Psychological Services, P.A.**
www.silberpsych.com
Fax cover-Others

1004 Dresser Court, Suite 103
Raleigh, North Carolina 27609
Telephone: (919) 876-5658
Fax: (919) 790-1521

1340 S.E. Maynard Road, Suite 201
Cary, North Carolina 27511
Telephone: (919) 481-9012
Fax: (919) 481-9013

## FACSIMILE TRANSMITTAL SHEET

TO: Maria Fuentes

DATE: 06/17/2009

FAX #: 215-590-9777

FROM: Silber

TOTAL # OF PAGES INCLUDING COVER: —3—

NOTES/COMMENTS:

RECEIVED

JUN 17 2009

Disability Services

CONFIDENTIALITY NOTE
THE INFORMATION CONTAINED IN THIS FACSIMILE MESSAGE IS LEGALLY PRIVILEGED AND CONFIDENTIAL INFORMATION INTENDED FOR THE
USE OF THE INDIVIDUAL OR ENTITY NAMED ABOVE. IF THE READER OF THIS MESSAGE IS NOT THE INTENDED RECIPIENT, YOU ARE HEREBY
NOTIFIED THAT ANY DISSEMINATION, DISTRIBUTION, OR COPYING OF THIS FACSIMILE IS STRICTLY PROHIBITED. IF YOU HAVE RECEIVED THIS
FACSIMILE IN ERROR, PLEASE IMMEDIATELY NOTIFY US BY TELEPHONE OR RETURN THE ORIGINAL MESSAGE TO US AT THE ADDRESS ABOVE
VIA THE UNITED STATES POSTAL SERVICE. THANK YOU.



**Silber Psychological Services, P.A.**
www.silberpsych.com

1028853         5-220-777-8
**Release-Others**

1004 Dresser Court, Suite 103
Raleigh, North Carolina 27609
Telephone: (919) 876-5658
Fax: (919) 790-1521

13-R S.E. Maynard Road, Suite 201
Cary, North Carolina 27511
Telephone: (919) 481-9012
Fax: (919) 481-9013

## Authorization for Release of Information

Patient Name: **Stephen H. Cockburn**   Date of Birth: _____   Phone No: **(919) 368-6904**
Address **2544 Ross Rd.**   **Silverspring**   **MD**   **20910**
   Street            City            State    Zip

### 1/ We authorize Silber Psychological Services to:

**590-9777**

| E X C H A N G E | W I T H | 1 | Name: **Marla L. Fuentes**   Phone Number: **(215) 590-9201** Fax Number: **215-590-9420**   Address: **3750 Market Ave. Philadelphia, PA 19104-3102**   Street  City  State  Zip |
| | | 2 | Name: _____   Phone Number: _____ Fax Number: _____   Address: _____  Street  City  State  Zip |
| | | 3 | Name: _____   Phone Number: _____ Fax Number: _____   Address: _____  Street  City  State  Zip |

### AND / OR

| O B T A I N | F R O M | 1 | Name: _____   Phone Number: _____ Fax Number: _____   Address: _____  Street  City  State  Zip |
| | | 2 | Name: _____   Phone Number: _____ Fax Number: _____   Address: _____  Street  City  State  Zip |
| | | 3 | Name: _____   Phone Number: _____ Fax Number: _____   Address: _____  Street  City  State  Zip |

☐ All information related to the coordination of care and treatment planning

☑ Other (Please Specify) **Documentation for testing Accommodations**

This authorization is limited to 180 days.

I have the right to revoke this authorization at any time by sending a written notification to this. However, revocation will not be effective to the extent that action based on the consent has already taken place or if this authorization was obtained as a condition of obtaining insurance coverage and the insurer has a legal right to contest a claim.

I understand that information used or disclosed pursuant to your authorization may be redisclosed by the recipient of your information thus no longer necessarily protected by the HIPAA Privacy Rule.

Signature: _____   Date: **06/16/04**

Witness: _____   Relationship to Patient: **self and _____**

**RECEIVED**

**JUN 1 7 2009**

**Disability Services**

7-21-1999 8:59AM     FROM                                                    P. 3

**Silber Psychological Services, P.A.**
www.silberpsych.com


1638954   5-228-777-8
2005 (Filipowski)-Evaluat

1004 Dresser Court, Suite 103
Raleigh, North Carolina 27609
Telephone:  (919) 876-5658
Fax:  (919) 790-1521

1340 S.E. Maynard Road, Suite 201
Cary, North Carolina 27511
Telephone:  (919) 481-9012
Fax:  (919) 481-9013

**CONFIDENTIAL**

## PSYCHOLOGICAL EVALUATION ADDENDUM

NAME:  Stephen Cockburn
BIRTHDATE:
DATE: 06/16/09                         EVALUATION DATES: 6/16, 6/20 & 6/30/05

**ADDENDUM:**
Stephen Cockburn completed a comprehensive psychological evaluation with us in June of 2005.  He's currently in the process of requesting additional time on testing at medical school and the review panel needed some additional information regarding the testing.  The Nelson-Denny Reading Test: Form G was administered at that time.  The review panel is requesting the scaled scores from that administration.

**ASSESSMENT PROCEDURES:**
Nelson-Denny Reading Test: Form G

**TEST RESULTS:**

   **Nelson-Denny Reading Test:**

                              Scale Score

      **TOTAL**                  211
      Vocabulary                 227
      Comprehension              194
      Reading Rate               171

David Filipowski, Ph.D.
Licensed Psychologist

DF/tm

Page 1 of 1

RECEIVED

JUN 1 7 2009

Disability Services

# EXHIBIT 17

July 23, 2009

Catherine Farmer, Psy.D.
Manager, Disability Services
National Board of Medical Examiners
3750 Market Street
Philadelphia, PA 19104

Dear Dr. Farmer:

I am writing in regard to the materials submitted by Stephen Cockburn (USMLE # 5-220-777-6), who has requested accommodations for the USMLE Step 1 exam. Specifically, Stephen stated that he has a reading disability and a writing disability, both of which were diagnosed in 1998. In support of his request for accommodations, Stephen submitted the following materials: 1) a personal statement (undated); 2) copies of high school records from Ravenscroft School; 3) a copy of his AMCAS Application report; 4) a Psychological Evaluation completed in1/98 and 4/98 by Dr. David Filipowski; 5) a Psychological Evaluation completed in 6/05 by the Dr. David Filipowski; 6) a letter written by Dr. David Filipowski dated 6/16/09; 7) a USMLE form confirming that he has received accommodations in medical school since July, 2007; 8) a form signed by Ms. Cypriana Bullock of Howard University dated 1/13/09 confirming that he has received accommodations; 9) a letter written by Dr. Scott Satterlund dated 7/13/09; 10) a letter written by Dr. James Fuller dated 12/19/05; 11) a letter written by Ms. Janet Smith dated 9/16/05; 12) a letter written by Ms. Marilyn Haight confirming that he received accommodations for the MCAT on 4/21/06; and 13) a letter (handwritten) that he composed for the MCAT committee (undated).

RECEIVED

JUl 2 4 2009
Disability Services

Based on my review of the documentation submitted by Stephen, it is my opinion that the available documentation does not demonstrate that he meets the criteria for Reading Disorder or Writing Disorder. Specifically, the data do not demonstrate that he is unable to learn and achieve at a level commensurate with the average person of his age in the general population. The following evidence is offered in support of my opinion.

First, there is no objective documentation that Stephen has a longstanding history of inability to learn at a level commensurate with his same age peers in the general population. No evidence was presented which shows that he exhibited severe problems with reading or writing at any point in his elementary and secondary education years. Although his elementary school records were unavailable, there was no evidence that Stephen had severe problems with reading and writing in high school. His high school transcript contained mostly grades of B and C in the ninth and tenth grades, the time period in which he did not receive accommodations, and in eleventh and twelfth grades, the time period in which he received accommodations (see letter from Janet Smith). He graduated with an overall GPA of 2.55 from what appeared to be a private high school program. Stephen achieved a score in the average range on the Reading Section of the PSAT (44th percentile); however, his score was in the below average range on the Writing section (6th percentile). His Composite score on the ACT (19) was in the average range (26th percentile), and he achieved a stronger score on the Reading section (22) when he was compared to a *select* population on this measure. When he took the SAT without accommodations in 3/98, he also achieved in the average range on both the Verbal (490) and Math (440) sections when he was compared to a *select* population. The aforementioned record of accomplishments belies the notion that Stephen experienced severe problems with reading.

RECEIVED

JUL 2 4 2009

Disability Services

Second, the available documentation contains no evidence that Stephen was diagnosed as having a disability in his elementary, secondary, or postsecondary education years. In fact, he was not formally diagnosed with a disability until he was 24 years old. A disability for learning is typically identified in elementary school, i.e., it is a developmental disability. Even if a student is not formally diagnosed, he should present objective data showing that he had severe problems throughout his school career. In his application, Stephen claimed that he had been diagnosed with both a reading and writing disability in 1998. However, in the 1998 evaluation, Dr. Filipowski stated that Stephen "…does not meet formal diagnostic criteria for the presence of a learning disability…" (In his handwritten letter to the MCAT committee, Stephen stated that he did not meet criteria for LD at that time.) Moreover, in the 2005 evaluation Dr. Filipowski diagnosed Stephen with a reading disability but not a writing disability. Even though Stephen may have worked hard to achieve, he has an age-appropriate record of achievement prior to age 24 when he was formally diagnosed with a disability and also prior to eleventh grade before receiving accommodations.

Third, in his 2005 evaluation, Dr. Filipowski based his diagnosis, at least in part, on aptitude-achievement discrepancies. However, the diagnosis of learning (reading) disability using this procedure has been shown to be invalid. Stephen achieved in the average range on timed, standardized measures of reading when he was compared to his age level peers. On the WJ-III, he achieved in the average range on the WJ-III Broad Reading ($SS = 86$), Basic Reading Skills ($SS = 99$) and Reading Comprehension ($SS = 98$) Clusters as well as the Letter-Word Identification ($SS = 94$), Passage Comprehension ($SS = 96$), Word Attack ($SS = 110$), and Reading Vocabulary ($SS = 100$) subtests. Stephen also achieved in the average range on the Nelson-Denny Reading Comprehension subtest ($SS = 194$) and the Total Test ($SS = 211$), and in the above average range on the Vocabulary subtest ($SS = 227$). He achieved in the below average range on the Nelson Denny Reading Rate

**RECEIVED**

JUL 2 4 2009

**Disability Services**

4

subtest; however, his reading rate (speed) did not hinder his performance on the Vocabulary and Comprehension subtests, both of which are timed. Stephen achieved in the below average range on one WJ-III subtest, Reading Fluency (*SS* = 80). However, ipsative analysis should not be conducted with subtest scores nor should the results of subtest analysis be used to make diagnostic decisions, especially when scores on other timed measures of the same skill, i.e., reading, are in the average range.

Fourth, the available evidence does not provide documentation that Stephen meets the criteria for Reading Disorder because this diagnosis involves more than the presence of an aptitude-achievement discrepancy. There is no evidence that he meets Criterion B in the DSM-IV description of this disorder, i.e., the disturbance in Criterion A significantly interferes with academic achievement or activities of daily living that require reading. As noted earlier, Stephen's scores on all timed, standardized measures of reading were in the average range except for one subtest (WJ-III Reading Fluency) when he was compared to his same age peers in the general population. In addition, there is no documentation which shows that reading difficulties interfere with activities of daily living as evidenced by the fact that he worked as a pharmacy technician in a hospital and in a contract position with a pharmaceutical company.

Fifth, there was a problem with the testing report completed by Dr. Filipowski. That is, he used grade-based norms from the Nelson-Denny Reading Test to compare Stephen to his peers. However, the use of grade-based norms is inappropriate for comparison purposes.

RECEIVED

JUL 2 4 2009

Disability Services

5

Overall, the available evidence shows that Stephen has the ability to achieve at an average level academically when he is compared to a representative sample of his same age peers in the general population. Based on the documentation, the data do not support the diagnosis of Reading Disorder. In addition, there is no evidence which shows that he has been diagnosed with a Writing Disorder. Thus, it is my conclusion that the request for accommodations should be denied.

Sincerely,


Richard L. Sparks, Ed.D.

RECEIVED

JUI 2 4 2009

Disability Services

# EXHIBIT 18


# NBME™

National Board of Medical Examiners
3750 Market Street
Philadelphia, PA 19104-3102

**CONFIDENTIAL**

215-590-9500 phone
www.nbme.org

August 31, 2009

1040305   5-220-777-6
Denial-Decision Letter (a

Stephen H. Cockburn
2544 Ross Rd., Apt #103
Silver Spring, MD 20910

RE: USMLE Step 1                    USMLE ID#: 5-220-777-6

Dear Mr. Cockburn:

We have thoroughly reviewed your request for test accommodations for the United States
Medical Licensing Examination (USMLE) Step 1 and accompanying material in accordance
with USMLE guidelines for examinees with disabilities. Your request was reviewed within the
framework of the Americans with Disabilities Act (ADA), and as amended by the ADA
Amendments Act of 2008 (together, "ADA"). We consulted an expert in the field of disorders of
learning to assist us in reviewing the documentation.

According to your request form, you report being diagnosed with a Reading Disability and
Writing Disability in 1998. Submitted with your request was a 1998 report of Psychological
Evaluation conducted when you were a 17-year-old junior. Dave Filipowski, Ph.D. reports that
you were referred for evaluation by the academic skills counselor at Ravenscroft School and that
your parents reported you had *"trouble completing tests in a timely fashion."* In his 1998 report,
Dr. Filipowski concluded that you did not meet diagnostic criteria for a learning disability and he
did not assign any diagnosis. He stated, *"Stephen's performance on the Woodcock Johnson, an
individually administered test of academic achievement, was generally within the range expected
given his IQ scores."*

In a June 2005 report of Psychological Evaluation conducted when you were a 24-year-old
college graduate, Dr. Filipowski reports that you returned for an updated psychoeducational
evaluation after taking the MCAT without accommodations and being informed by the MCAT
administrators that no formal disability had been identified. In his 2005 report, Dr. Filipowski
concluded, *"In general, Stephen's academic achievement measures were well below the level
expected given his IQ scores and using the standard discrepancy formula he can be qualified for
Learning Disabled in the areas of Reading and Written Language. Using the stricter criteria
associated with the Americans for Disability Act [sic], Stephen meets the criteria for a DSM-IV
Reading Disorder, 315.00, which significantly impairs his ability to perform on timed reading
tasks."*

Learning difficulties of sufficient severity to substantially compromise reading, writing and learning are generally recognized as being developmental in nature. Individuals with learning disabilities typically present a long history of academic difficulties and poor achievement dating back to elementary school. The *Diagnostic and Statistical Manual of Mental Disorders, Fourth Edition Text Revision (DSM-IV-TR)* diagnostic criteria for a learning disorder include the requirement that the disturbance "significantly interferes with academic achievement or activities of daily living" that require reading or writing skills. Despite the difficulties that you report, no early school records were provided to demonstrate impairment with respect to the acquisition of reading or writing skills. The earliest record submitted was a high school transcript showing your cumulative GPA at Ravenscroft School ranged from 2.9 at the end of 9th grade to 2.5 at the end of 12th grade. Your documentation shows that under standard time conditions, you earned a PSAT Verbal score in 11th grade that was better than 44 percent of a national sample of college bound high school students and commensurate with your Average range SAT Verbal score obtained in March 1998. Your February 1998 ACT Reading score of 22 is better than 59% of a national sample of college bound high school students. Overall, these data do not demonstrate impairments with respect to reading, writing, or learning relative to most people in the general population.

Accommodations are intended to provide access to the USMLE testing program for individuals with a documented disability as defined by the ADA. A diagnostic label, in and of itself, does not establish coverage under the ADA, nor does prior receipt of accommodations for a particular activity guarantee that identical accommodations are indicated or will be available in all future settings and circumstances. The ADA covers individuals who are substantially limited in a major life activity. Determination of whether an individual is substantially limited in functioning as compared to most people is based on assessment of the current impact of the identified impairment. Unlike some education laws that focus on maximizing an individual's potential (e.g., Individuals with Disabilities Education Act), the ADA is not intended to focus on the achievement of a particular result, such as test completion or a passing score.

Despite the difficulties that you report, your documentation does not demonstrate that you are currently substantially limited in a major life activity as compared to most people, or that additional testing time is an appropriate modification of your Step 1 test administration. Therefore, after a thorough review of all of your documentation, I must inform you that we are unable to provide you with the requested accommodations.

We will advise Applicant Services to process your exam application without test accommodations. You may inquire at usmlereg@nbme.org or call Applicant Services directly at (215) 590-9700 with any questions about your scheduling permit.

Sincerely,

Catherine Farmer, Psy.D.
Manager, Disability Services
ADA Compliance Officer, Testing Programs

# EXHIBIT 19



1042824          5-220-777-5
Reconsideration Request L

To the disability services of the National board of medical examiners,

I am writing to you for reconsideration in regard to my request for accommodations (double time) on the USMLE. As Dr. Farmer stated in my letter of denial, learning disorders will appear early in ones academic career. Although I was not diagnosed with a reading disorder until after I completed college, my original psychologist diagnosed me without a complete history of my early academic career. My current psychologist Dr. Culotta, requested that I retrieve my academic records from kindergarten through the eighth grade. After administering a new psychological evaluation and reviewing my grades as well as teacher comments from Kindergarten- grade 8, Dr. Cullota informed me that I have Attention-Deficit/ Hyperactivity disorder- predominantly inattentive type (314.00) as well as a reading disorder (315.00). These two disorders have a synergistic effect putting me at a great disadvantage with my peers. Therefore, I respectfully request to be reconsidered for accommodations (double time) for the USMLE step 1 boards. Attached to this document for your review and consideration are Dr. Culotta's psychological evaluation and report cards with teacher's comments from kindergarten through grade 8.

Thank you,

Stephen Cockburn

RECEIVED

OCT 3 0 2009

Applicant Services

RECEIVED

OCT 3 0 2009

Disability Services