IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| STEPHEN HARRISON COCKBURN | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 10-1407 |
| | ) | |
| NATIONAL BOARD OF | ) | |
| MEDICAL EXAMINERS | ) | |
| | ) | |
| | ) | |
| Defendant | ) | |

### AFFIDAVIT OF VINCENT P. CULOTTA, PH.D.

1. My name is Vincent P. Culotta. I am over 18 years old, I have personal knowledge of the matters stated herein, and I am competent to testify to those matters.

2. I have received my doctorate in clinical psychology.

3. I am a board-certified, practicing neuropsychologist and clinical psychologist with 22 years of experience in this practice.

4. In the course of my practice, I have conducted thousands of neuropsychological evaluations. As a result, I am familiar with the Diagnostic and Statistical Manual-IV-TR, also known as the DSM-IV.

5. On September 30, 2009, October 5, 2009, and October 8, 2009, Stephen Cockburn visited my practice in order to undergo a neuropsychological evaluation. I met with Mr. Cockburn, selected the battery of assessments that were administered, reviewed the results of those assessments as well as school records provided by Mr. Cockburn, and drafted a neuropsychological report summarizing these records and testing results.

6. Based on that evaluation, I determined that Mr. Cockburn met the criteria for two disorders set forth in the DSM-IV.

7. I determined that Mr. Cockburn met the DSM-IV criteria for Attention-Deficit/Hyperactivity Disorder-Predominantly Inattentive Type of A(1), B, C, D and E.

8. Specifically regarding Criterion A(1), I found from Mr. Cockburn's school records, our interview, and testing, that Mr. Cockburn often failed to give close attention to details or made careless mistakes; often had difficulty sustaining attention; often did not follow through on instructions and failed to finish tasks; often had difficulty organizing tasks and activities; often avoided or was reluctant to engage in tasks that require sustained mental effort; was often easily distracted by extraneous stimuli; and was often forgetful in daily activities.

9. Regarding Criterion B, I found on reviewing Mr. Cockburn's school records that these symptoms were evident throughout elementary school.

10. Regarding Criterion C, I found from interviewing Mr. Cockburn and reviewing his school records that these impairments were present at school, and at home, as Mr. Cockburn's parents and teachers regularly intervened to refocus him on tasks.

11. Regarding Criterion D, I found on reviewing Mr. Cockburn's school records and from our interview that there had been a clinically significant impairment in his academic functioning.

12. Regarding Criterion E, I found that these symptoms did not occur during the course of another psychological or mental disorder.

13. I also determined that Mr. Cockburn met the DSM-IV criteria for a Reading Disorder of A, B and C.

14. Regarding Criterion A, I found that Mr. Cockburn's scores on standardized tests of reading were below expectations given his age, education and intelligence. Specifically, I found that Mr. Cockburn had substantial difficulty reading and comprehending simple sentences quickly, and that his resulting score was below average; and that he had substantial difficulty comprehending passages he had read in a timed test, and that his resulting score was very low.

15. Regarding Criterion B, I found that these difficulties interfered with Mr. Cockburn's academic achievement, and interfered with other activities of daily living that require timed reading skills.

16. Regarding Criterion C, I did not find that Mr. Cockburn experienced a sensory deficit.

17. I have had occasion to review my evaluation. In my professional opinion, both of my diagnoses of Mr. Cockburn were appropriate. Both diagnosed conditions are chronic, long-lasting conditions, and the diagnoses are still appropriate.

18. In my professional practice, the average person achieves standardized test scores that place him or her somewhere between the 25th and 75th percentile. Someone who achieves standardized test scores below the 25th percentile is performing substantially below average.

19. Mr. Cockburn achieved scores on standardized reading subtests in the 1st, 3rd, 9th and 12th percentiles. These scores are substantially below the performance of the average person.

20. In the course of my practice, I have frequently reviewed psychological, neuropsychological, psychoeducational and psychiatric evaluations produced by other diagnosticians.

21. In the course of my practice, and in my professional opinion, it is inappropriate to render an opinion on the diagnosis of a disability based solely on reviewing the report of another diagnostician.

22. In the course of my practice, and in my professional opinion, it is only appropriate to render an opinion of the diagnosis of a disability after laying eyes on the person who claims to have the disability.

23. I have reviewed the letters produced by Dr. Richard Sparks and Dr. Steven Zecker, which were sent to the National Board of Medical Examiners as a result of Mr. Cockburn's request for accommodations on the USMLE-Step 1.

24. I disagree with the conclusions of Dr. Sparks and Dr. Zecker that Mr. Cockburn does not meet the DSM-IV criteria for a Reading Disorder

25. I disagree with the conclusion of Dr. Zecker that Mr. Cockburn does not meet the DSM-IV criteria for Attention-Deficit/Hyperactivity Disorder-Predominantly Inattention Type.

26. I disagree with Dr. Sparks' and Dr. Zecker characterizations of the appropriate normative sample for comparison of Nelson Denny Reading Test scores.

27. In my practice, and in my professional opinion, it is not meaningful to compare the Nelson-Denny Reading Test scores of a 24- or 28-year-old college graduate to the pooled sample to determine whether there is a significant limitation on the college graduate's ability to read.

28. In my practice, a diagnostician's decision not to diagnose a disability does not mean that the diagnostician definitively determined that disability was not present.

29. In my practice, I have frequently encountered instances when a student who had a reading disability and/or ADHD, and the school failed to identify that student with a disability.

I declare and affirm, under the penalties of perjury and based upon my personal knowledge, that all of the facts set forth in this Affidavit are true and correct.

_____
Dr. Vincent P. Culotta

2/11/11
Date