UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| STEPHEN HARRISON COCKBURN, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | CIVIL ACTION |
| | : | |
| NATIONAL BOARD OF MEDICAL EXAMINERS, | : | No. 10-1407-JS |
| | : | |
| Defendant. | : | |

**DEFENDANT NATIONAL BOARD OF MEDICAL EXAMINERS'
REPLY BRIEF IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

This straightforward case should be decided on summary judgment. To prevail on his ADA claim, Plaintiff must show that he is "substantially limited" in his ability to read or to learn as compared to most people in the general population. His own evidence shows that this is a burden he cannot meet. It is undisputed that Plaintiff did well in college and has been able to progress through his classes in medical school without asking for accommodations in any context other taking tests and quizzes. As a matter of law, he is not substantially limited in his ability to learn or to read.

Defendant National Board of Medical Examiners ("NBME") respectfully submits this Reply brief in support of its motion for summary judgment (DE #29). In 23 pages of argument, Plaintiff's Opposition ("Pl. Opp.") (DE #30) fails to identify any genuine issues of *material* fact. Indeed, Plaintiff focuses primarily on an issue that is not in dispute for summary judgment purposes – the validity of his diagnoses. The issue before the Court is whether Mr. Cockburn is substantially limited in the major life activities of learning or reading. The record – comprised primarily of Plaintiff's own documents and testimony – shows that he is not.

90371554.2

Plaintiff argues that "[t]he question of whether an impairment substantially limits major life activities is a question of fact, for the trier of fact." Pl. Opp. at 22 (citing *Holt v. Grand Lake Mental Health Ctr.*, 443 F.3d 762, 765 n.1 (10th Cir. 2006)). But the *Holt* court actually endorsed the use of summary judgment on this issue when warranted: "Ascertaining whether the impairment substantially limits the major life activity is a question of fact for the jury, ***although a court is not precluded from deciding the issue on a motion for summary judgment***." 443 F.3d at 765 n.1 (emphasis added). As NBME noted in its opening brief, courts frequently grant summary judgment to defendants in ADA cases very similar to this one, where a plaintiff claims to be disabled due to learning disabilities and/or ADHD. NBME Br. at 11. These cases remain good law following passage of the ADA Amendments Act; Plaintiff cites no authority to the contrary.

## I. FACT DISPUTES MUST BE "MATERIAL" IN ORDER TO DEFEAT SUMMARY JUDGMENT.

For purposes of its summary judgment motion, NBME is not challenging the learning disability and ADHD diagnoses that Mr. Cockburn sought and obtained specifically to support a request for extra testing time on the United States Medical Licensing Examination. *See* NBME Br. at 11 n.2. Although Mr. Cockburn purports to acknowledges this fact, *see* Pl. Opp. at 2, he devotes the bulk of his opposition brief to arguing that there are issues of fact regarding whether he was properly diagnosed, *see id.* at 7-14. Any issues regarding the appropriateness of his diagnoses are not material to NBME's pending summary judgment motion.

Likewise immaterial are Mr. Cockburn statements that he "struggled" to "succeed" in elementary school. Pl. Opp. at 2; *see also id.* at 16 (describing nights spent studying with his mother and father). His own academic records show that, at the end of the day, ***he did succeed,***

*and he did so without accommodations.  See id.*  He was generally a B or C student throughout elementary school.

Mr. Cockburn emphasizes one document that discussed problems he allegedly experienced with daydreaming during sixth grade, and the less-than-stellar grades he received that year.  *See* Pl. Opp. at 3-4.  That evidence falls well short of creating a material fact issue that justifies a trial.  Mr. Cockburn's academic record must be considered as a whole in determining whether there is a genuine issue of material fact regarding his ability to read or learn, and that record shows that he has not experienced substantial limitations.  *See* NBME Br. at 5-8.

He attended an academically rigorous high school.  He then went on to do well in college and gain admission to medical school.  *See* NBME Br. at 5.  This is not the record of someone who is substantially limited in the major life activities of reading or learning as compared to most people.  Most people in the United States read at the 8th or 9th grade level[1] and do not complete college, much less two years of medical school.

The record also shows that Mr. Cockburn has consistently scored in the average range or better on standardized tests *taken without accommodations*.  *See* NBME Br. at 7-8.  Mr. Cockburn attempts to create an issue of fact by pointing to his score of "2" on an Advanced Placement History test in 11th grade, which he describes as "too low to receive credit at most colleges and universities."  Pl. Opp. at 5.  But in 1998, 2,794 of the 5,575 students in North Carolina who took the AP History Test received a score of 2 or lower.  *See*

---

[1] *See* D. D'Alessandro et al., *The Readability of Pediatric Patient Educ. Materials on the World Wide Web*, 155 Arch Pediatr. Adolesc. Med. 807, 807 (July 2001), *available at* http://archpedi.ama-assn.org/cgi/content/full/155/7/807; *see also* Comment, *Personalizing Informed Consent: The Challenge of Health Literacy*, 2 St. Louis U. J. Health L.  Pol'y 379, 397 (2009) ("The average adult in the United States reads at an Eighth grade level….") (citation omitted).

www.collegeboard.com/prod_ downloads/student/testing/ap/sumrpts/1998/nc_1998.pdf.   Thus, Mr. Cockburn fell well within the average range on that test, among the select group of high school students who took this Advanced Placement examination for college credit.

Nor is a material fact issue created by the fact that Mr. Cockburn's scores improved on the SAT and MCAT after he received accommodations.  *See* Pl. Opp. at 5, 6.  Mr. Cockburn's scores on the SAT were in the average range ***before*** he received accommodations, and he experienced only a modest score increase when he tested with accommodations.  Most individuals who take the SAT in both their junior and senior years of high school "improve[ ] their scores as seniors."  "Retaking the SAT," *at* http://professionals. collegeboard.com/testing/sat-reasoning/scores/retake.  And, while Mr. Cockburn now attributes his score improvement on the MCAT to the accommodations he received, he provided a different explanation when applying to medical school.  He told admissions personnel that he had not studied properly for the MCAT when he took it without accommodations, and that his score improvement reflected better test preparation; he did not suggest then that he did better because he got accommodations.  *See* Mew Decl. Ex. 3 at 2.

Mr. Cockburn next asserts that he never took much joy or interest in reading.  *See* Pl. Opp. at 15.  This is irrelevant to the question whether he is substantially limited in his *ability* to read.  Likewise, although Mr. Cockburn says that he studied Japanese in order to watch Japanese cartoons without reading the English subtitles, *see* Pl. Opp. at 16, that does not show that he is substantially limited in his ability to read compared to most people.  An individual who has the time and ability to study and learn Japanese at Duke University while also taking a full course load of challenging classes at another university, *see* Mew Decl. Ex. 2 Ex. 7 at 89:4-6, 119:20-

120:9; Farmer Decl. Ex. 6, is not substantially limited in the major life activities of learning or reading compared to most people.

II.  **"AVERAGE" OR "ABOVE AVERAGE" PERFORMANCE ON A DIAGNOSTIC ASSESSMENT BATTERY IS NOT ENOUGH TO ESTABLISH A "SUBSTANTIAL LIMITATION" IN THE MAJOR LIFE ACTIVITIES OF READING OR LEARNING.**

Plaintiff argues that he scored "below average" on certain of the diagnostic tests that are discussed in the evaluation report of his expert, Dr. Culotta.  *See id.* at 15 (referencing the Academic Fluency Composite and Reading Fluency and Math Fluency subtests of the Woodcock Johnson III; the Rey Complex Figure Test; and the Trailmaking and Stroop Color and Word Tests of executive functioning, and citing Farmer Decl. Ex. 21 at 11, 13, 14).  Mr. Cockburn's argument, however, is refuted by Dr. Culotta's own analysis of the test results.  Dr. Culotta describes Plaintiff's score on the Woodcock Johnson Reading Fluency and Math Fluency subtests as falling within the "low-average" range.  *See* Farmer Decl. Ex. 21 at 12.  Low average is still average.  Mr. Cockburn's percentile score on the Academic Fluency test was higher than his Reading Fluency score and would also fall in at least the low-average range.  *See id.*  Dr. Culotta likewise described Mr. Cockburn's performance on the Stroop Color and Word Test as falling in the low-average to average range.  *See id.* at 14.

In arguing that his scores are "below average," and thus contradicting his own expert witness's evaluation, Plaintiff relies on snippets of testimony from NBME's expert, Dr. Zecker, of what he considers to be a "below average" score on a standardized test.  *See* Pl. Opp. at 15. Plaintiff cannot create a genuine issue of material fact by contradicting his own expert's opinion. Mr. Cockburn, according to Dr. Culotta, scored below average on only two of many diagnostic tests that were administered to him, and average or better on ***all*** of the diagnostic ***reading*** tests. *See* Farmer Decl. Ex. 21 at 9-14.  As a matter of law, someone who has average or above

average reading abilities is not "substantially limited" as compared to the average person in the general population. *See, e.g., Allegheny Health, Educ. & Res. Found. v. Kirkland*, 321 B.R. 776, 798 (W.D. Pa. 2005); NBME Br. at 11-15 (citing additional cases).

Mr. Cockburn devotes considerable attention to his performance on the Nelson Denny Reading Test, *see* Pl. Opp. at 9, 12, 17-18, but the purported issue of fact regarding the meaning of Mr. Cockburn's Nelson Denny results is legally irrelevant. The only "fact" issue Plaintiff attempts to create is whether his score is more appropriately compared to the entire population of individuals who have taken the test (which includes individuals from age 17 through adulthood) or to other college seniors. *See* Pl. Opp. at 17-18. The legally relevant comparator group for ADA purposes is the "general population." *See, e.g., Singh v. George Washington Univ. Sch. of Med.*, 508 F.3d 1097, 1100 (D.C. Cir. 2007) (rejecting argument that comparison group should be other medical students). Therefore, his Nelson Denny test results cannot create a material fact issue on whether Mr. Cockburn has a reading disability within the meaning of the ADA.

### III. THE CASES CITED BY NBME REMAIN GOOD LAW FOLLOWING PASSAGE OF THE ADA AMENDMENTS ACT AND ARE DIRECTLY ANALOGOUS TO THIS CASE.

Mr. Cockburn incorrectly argues that many of NBME's cases have been "overruled" by statutory amendments to the ADA. *See* Pl. Opp. at 19.[2] The cases cited by NBME have

---

[2] Plaintiff's broad-brush argument appears to be that any case that cites the Supreme Court's opinions in *Toyota* or *Sutton* is no longer good law. *See* Pl. Opp. at 19. But the two ADA cases he relies upon both cite *Toyota* or *Sutton*. *See* Pl. Opp. at 22-23 (citing *Holt v. Grand Lank Mental Health Ctr.*, 443 F.3d 762 (10th Cir. 2002); *Bristol v. Bd. of Cty. Commissioners*, 281 F.3d 1148 (10th Cir. 2002)). Furthermore, contrary to Plaintiff's argument, not all of the cases cited by NBME rely on *Toyota* or *Sutton. See, e.g., McGuinness v. Univ. of New Mexico Sch. of Med.*, 170 F.3d 974 (10th Cir. 1998) (pre-dating both *Toyota* and *Sutton*). And the cases that cited *Toyota* or *Sutton* did so for propositions that were not rejected by the ADA Amendments Act. *See, e.g., Costello v. Mitchell Pub. Sch. Dist.*, 266 F.3d 916, 923 (8th Cir. 2001) (pre-dating *Toyota* and citing *Sutton* only for the non-controversial proposition that "[w]hether a person has a disability under the ADA is an individualized inquiry.").

continuing validity and relevance following passage of the ADA Amendments Act. Nothing in the ADA Amendments Act purported to alter the applicable "substantial limitation" analysis as being based upon a determination of whether an individual is substantially limited in a major life activity as compared to most people in the general population. This is the standard applied in the cases cited by NBME, and Plaintiff has not challenged and cannot challenge the continued applicability of this legal standard. *See* Pl. Opp. at 22. The directly analogous cases cited by NBME reflect the principle that, when your diagnostic tests and academic history show that you are average or above average in your ability to read or learn compared to most people, you are not disabled within the meaning of the ADA, and this determination can be made on summary judgment. Nothing in the ADA Amendments Act alters this analysis.

For his own part, Plaintiff has not cited a single case—pre- or post-ADA Amendments Act—in which a plaintiff with alleged impairments similar to his own was found to be disabled within the meaning of the ADA. He relies upon two ADA cases pre-dating the ADA Amendments Act, both of which involved individuals with physical impairments. *See* Pl. Opp. at 22-23 (citing *Holt* and *Bristol*). And he attempts to distinguish three of the cases cited by NBME on their facts, but misses the mark each time.

First, he attempts to distinguish *Hopkins v. St. Joseph's Creative Beginning*, 2003 U.S. Dist. LEXIS 21033 (E.D. Pa. 2003),[3] by noting that the *Hopkins* plaintiff's IQ was only in the 5th percentile and she had mildly impaired mental abilities. Pl. Opp. at 20. He does not say why

---

[3] Plaintiff identifies *Hopkins* as one of the cases that was "overruled" by the ADA Amendments Act because it relies on *Toyota* and *Sutton*. Pl. Opp. at 19. *Hopkins* relies on *Sutton* and *Toyota* for the propositions that (1) simply having a diagnosed impairment is not sufficient to show a substantial limitation in a major life activity for purposes of the ADA, and (2) an individualized inquiry must be made in determining whether someone is disabled. *See* 2003 U.S. Dist. LEXIS

this is significant. Mr. Cockburn does have a higher IQ than the *Hopkins* plaintiff, but the ADA does not define disability based on whether you are living up to your potential. *See, e.g., McCrary v. Aurora Pub. Sch.*, 57 Fed. Appx. 362, 371 (10th Cir. 2003) ("[A]lthough plaintiff had some deficits in her ability to think and learn when compared to what would be expected from someone with her strengths, even her deficits were in the average range.").[4] Nor is it relevant that the *Hopkins* plaintiff had no history of accommodations. Pl. Opp. at 20. Mr. Cockburn's prior receipt of accommodations in the limited context of testing does not establish that he was entitled to them under the ADA, particularly since he received that accommodation in high school even though the psychologist he consulted at the time concluded that he could not diagnose him with a learning disability and did not diagnose any attention deficit disorder. In any event, "the fact that a person has been granted a particular accommodation in the past does not mean that such accommodations are presumably reasonable. Each testing agency has an independent duty under the ADA to determine reasonableness on a case-by-case basis." *Ware v. Wyoming Bd. of Law Examiners*, 973 F. Supp. 1339, 1357 (D. Wyo. 1997).

Mr. Cockburn also cannot distinguish his situation from the plaintiff in *Brief v. Albert Einstein School of Medicine*. *See* Pl. Opp. at 20-21. Mr. Brief had below average results on certain diagnostic tests and also testified to problems with attention. 2010 U.S. Dist. LEXIS 55302, at *11-12. Mr. Cockburn relies upon similar evidence in this case. The *Brief* court ruled on a motion for summary judgment that the plaintiff was not substantially limited in a major life

---

21033, at *11, 13-14. These important principles were not rejected by the ADA Amendments Act, and the analysis in *Hopkins* remains apposite to this case.

[4] *McCrary* is another example of a pre-ADA Amendments Act case whose analysis remains valid. *McCrary* cites *Sutton*, but only for the proposition, which is irrelevant here, that mitigating measures must be taken into account in determining whether someone is substantially limited in a major life activity. 57 Fed. Appx. at 371.

activity, pointing to objective evidence of the plaintiff's academic accomplishments. The same result is warranted here.

Next, Mr. Cockburn attempts to distinguish *Baer v. NBME*, which held that test-taking is not a major life activity. *See* Pl. Opp. at 21. He argues that his allegations are broader, because he has alleged that he "is substantially impaired in the activities of reading and learning." *Id.* It is true that he has made such allegations, but he has testified that the only area in which he purportedly needs accommodations is test taking. Receiving accommodations in the limited context of taking tests is not enough to show a substantial limitation in reading or learning. *See Marlon v. Western New England Coll.*, No. 01-12199-DPW, 2003 NDLR (LRP) LEXIS 897, at *25 (D. Mass. 2003) ("A showing that her learning disability may have impaired her ability to achieve a score reflective of her ability on the final exams is much too narrow to meet the burden of demonstrating a substantial[ ] limitation in the major life activity of learning."); *Ristrom v. Asbestos Workers Local 34 Joint Apprentice Comm.,* 370 F.3d 763, 770 (8th Cir. 2004) ("The inability to pass a few highly specialized courses does not indicate an inability to learn under the ADA."); *Singh v. George Washington Univ. Sch. of Med.*, 597 F. Supp. 2d 89, 95 (D.D.C. 2009); *Baer v. NBME*, 392 F. Supp. 2d 42, 47 (D. Mass. 2005).

Recognizing that getting accommodations solely on tests and quizzes is not enough to show a substantial limitation in reading or learning, Mr. Cockburn suggests that he "self-accommodated" in other academic contexts by using class time in medical school to study and by relying on power point presentations, options that are available to all students at his medical school. *See* Pl. Opp. at 21. That evidence is not enough to create a material issue of fact. Mr. Cockburn is simply using study techniques that are used by all students.

## **CONCLUSION**

The Court should enter summary judgment in favor of NBME.

                                           Respectfully submitted,

                                           /s/ Robert A. Burgoyne
                                           Robert A. Burgoyne
                                           Caroline M. Mew
                                           FULBRIGHT & JAWORSKI L.L.P.
                                           801 Pennsylvania Avenue, NW
                                           Washington, DC  20004-2623
                                           Telephone: (202) 662-0200
                                           Fax:  (202) 662-4643
                                           rburgoyne@fulbright.com
                                           cmew@fulbright.com

Dated this 18th day of February, 2011.

-11-

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing document was filed electronically and is available for viewing and downloading from the ECF system. Counsel of record for plaintiff were served through the Court's electronic case filing system.

                                                                               /s/ Robert A. Burgoyne_____