IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

STEPHEN HARRISON COCKBURN )
)
Plaintiff, )
)
v. ) Civil Action No. 10-1407
)
NATIONAL BOARD OF )
MEDICAL EXAMINERS )
)
Defendant )

**PLAINTIFF'S SURREPLY TO THE DEFENDANT'S REPLY TO THE PLAINTIFF'S RESPONSE IN OPPOSITION TO THE MOTION FOR SUMMARY JUDGMENT**

The Defendant filed a Motion for Summary Judgment on February 7, 2011. The Plaintiff filed a Response to the Motion for Summary Judgment on February 14, 2011. The Defendant filed a Reply Brief in Support of Its Motion for Summary Judgment on February 17, 2011. The Plaintiff, by leave of this Court, files this Surreply on February 24, 2011. The Plaintiff has sought the Court's leave to file this Surreply because the Defendant misconstrued the statements of the experts in this case. In addition, the Plaintiff has sought the Court's leave to file this Surreply to correct several misstatements of fact.

**I. The Defendant Misconstrues The Statements Of The Experts In Determining Whether The Plaintiff's Performance Is "Below Average"**

The Defendant alleges that "Dr. Culotta describes Plaintiff's score on the Woodcock Johnson Reading Fluency and Math Fluency subtests as falling within the 'low average' range." See Reply Brief in Support of the Motion for Summary Judgment (hereinafter, "NBME Reply"), at 5. The Defendant alleges that this means that Mr. Cockburn was not "below average" on those subtests because "[l]ow average is still average." See id.

1

The Defendant either misunderstands or deliberately misconstrues the meaning of the term "low average" in Dr. Culotta's evaluation. As Dr. Culotta has clarified in the attached Affidavit, the context of Woodcock-Johnson testing, it is incorrect to say that "low average is still average." See Second Affidavit of Dr. Vincent P. Culotta (hereinafter, "Second Culotta Affidavit"), attached hereto, at 1. An excerpt from the testing booklet relied on by Dr. Culotta in his practice indicates that scores between 90 and 110 are classified as "Average," while scores between 80 and 89 are classified as "Low Average." See Exhibit C, Excerpt from Woodcock-Johnson III Testing Manual, attached hereto, 3. The excerpt from the booklet indicates that the use of these "labels may assist in communicating test results, . . . [but] the meaning of the labels is misunderstood." See id. at 2. As a result, the Defendant's statement that "low average is still average" is simply incorrect. Instead, as Dr. Culotta clarified, for the purposes of describing performance on such tests to lay readers, it is clearer to state that performance below the 25th percentile is below average. See Second Culotta Affidavit at 2.

Mr. Cockburn's score on the Reading Fluency subtest of the Woodcock-Johnson tests placed him in the 12th percentile, or substantially below the 25th percentile for average.

In this regard, Dr. Culotta is in agreement with the testimony of the Defendant's own expert witnesses. The Defendant alleges that the Plaintiff relied "on snippets of testimony from NBME's own expert, Dr. [Steven] Zecker, of what he considers to be a 'below average' score on a standardized test." See NBME Reply at 5. In fact, Dr. Zecker repeatedly made statements in his testimony that would place Mr. Cockburn's in the "below average" within the meaning of the ADA. In response to a request to define "a substantial limitation compared to the average person," Dr. Zecker stated that "I define it as below the average range for individuals of the same age from the general population presumably from the normative sample of that test, if we are

2

talking about a specific test." See Exhibit B to the Plaintiff's Response in Opposition to the Motion for Summary Judgment (hereinafter, "Ex. B"), filed on February 14, 2011, at 45:11-17. Dr. Zecker clarified that "when we talk about the average range, what [we are] talking about in terms of percentiles [is b]elow the 25th percentile." See id. at 46:1-4. Dr. Zecker agreed that Mr. Cockburn's score fell below the 25th percentile on the Woodcock-Johnson test of Reading Fluency. See id. at 47:13-16.[1]

The Defendant's other expert witness, Dr. Richard Sparks, provided a much more stringent definition of what constitutes "below average," but still provided a definition that would include Mr. Cockburn's performance during Dr. Culotta's evaluation. In response to the question "[w]hen we talk about percentiles, what is the average range," Dr. Sparks answered "Minus 1 to plus 1 standard deviation . . . . So 15th or 16th, 84th, 85th [percentiles]." See Exhibit D, Transcript of the Deposition of Dr. Richard Sparks, attached hereto, at 52:16-22. In clarification of that testimony, Dr. Sparks agreed that "someone would have to be below the 16th or 15th percentile in order for them to be below average[.]" See id. at 53:1-4.

In short, all three of the experts in this case agree that an individual who performs at the 12th percentile on a standardized measure – as Mr. Cockburn did on the test of Reading Fluency administered by Dr. Culotta – is performing "below average." The alternative offered by the Defendant tortures the language, and misconstrues a term of art to achieve its effect.

---

[1] "Q: We know that on the reading fluency of the Woodcock-Johnson he was below the 25th percentile. Would you agree with that?
A: Yes."
Dr. Zecker reaffirmed this agreement later in his deposition testimony:
"Q: If we go down to the table of subtest scores, you see under reading fluency 12th percentile?
A: Um-hmm.
Q: So that would be below average?
A: Um-hmm."
See Ex. B at 64:3-8.

3

## II. The Defendant Misstates Facts

In alleging that Mr. Cockburn does not experience a substantial limitation in the areas of reading and learning, the Defendant alleges that Mr. Cockburn "stud[ied] and learn[ed] Japanese at Duke University while also taking a full course load of challenging classes at another university." See NBME Reply at 4. This misstates the plain facts of Mr. Cockburn's college transcript, which the Defendant itself entered into evidence in support of its Motion. See Exhibit 6 to Farmer Declaration (hereinafter, "F. Ex. 6"). Mr. Cockburn's transcript indicates that he took Japanese in the fall of his junior year of college. See id. at 2. That semester, he completed 11 credits worth of classes – one of his lowest courseloads in college – including the Japanese class. See id.[2] That semester was the first time in college that Mr. Cockburn withdrew from a class without completing it. See id. Mr. Cockburn's attempt to learn Japanese does not indicate that he was not substantially limited in the areas of reading or learning.

The Defendant also alleged that Mr. Cockburn has inconsistently attributed his higher MCAT score in April 2006 "to the accommodations he received," but that "he provided a different explanation when applying to medical school." See NBME Reply at 4. This is incorrect. Mr. Cockburn clarified during his deposition that, during his entry interview for the Howard University College of Medicine, he did not bring up his disability because "I didn't want to disclose that." See Exhibit 7 to Mew Declaration (hereinafter, "M. Ex. 7") at 119:1-14. Mr. Cockburn agreed that his study and preparation for the fourth administration of the MCAT had helped, but believed that his improved score was "due in large part to the accommodation of extended time." See Affidavit of Stephen Cockburn, filed February 14, 2011.

---

[2] In his freshman year, Mr. Cockburn completed 23 credits in the fall semester and 18 credits in the spring semester. See F. Ex. 2 at 1-2. In his sophomore year, Mr. Cockburn completed 17 credits during the fall and spring semester. See id. at 2. In his junior year, Mr. Cockburn completed 11 credits in the fall, and only 8 credits in the spring. See id. at 2-3. In his senior year, Mr. Cockburn completed 14 credits in both the fall and spring semesters. See id. at 3.

4

The Defendant also alleged that Mr. Cockburn "has testified that the only area in which he purportedly needs accommodations is test taking." See NBME Reply at 9. The Defendant does not provide any citation to any portion of its own exhibits to indicate that Mr. Cockburn has testified to this statement. In fact, Mr. Cockburn has not testified that "the only area in which he needs accommodations is test-taking"; he has testified, and argued in his Response to the Defendant, that his history is replete with accommodations in the area of extra time to read. The Defendant alleges that Mr. Cockburn is ineligible to receive accommodations as a person with a disability in part because he is intelligent enough to understand texts written higher than an 8th or 9th grade level. See NBME Reply at 3. Apparently, by the Defendant's criteria, no one who receives a high school diploma can ever experience a substantial limitation in the area of reading.

### III. The Defendant Erroneously Asserts That Legal Precedent Makes A Relevant Issue of Material Fact "Legally Irrelevant"

The Defendant asserts that "the purported issue of fact regarding the meaning of Mr. Cockburn's Nelson Denny results is legally irrelevant." See NBME Reply at 6. Citing the decision of the U.S. Court of Appeals for the D.C. Circuit in Singh v. George Washington Univ. Sch. Of Med., 508 F.3d 1097 (2007), for the principle that Mr. Cockburn must be compared to "the general population" to determine if he is substantially limited in the area of reading, the Defendant broadly asserts that Mr. Cockburn's "Nelson Denny test results cannot create a material fact on whether Mr. Cockburn has a reading disability within the meaning of the ADA." See NBME Reply at 6. In Singh, the court made clear that it contrasted "the general population" with persons of "elite ability or unusual experience," and therefore rejected the proposition that the only relevant average person with whom to compare a medical student was another medical student. See 508 F.3d at 1100. But the Court went on to note that "the medical definition of an *impairment* will frequently make reference to age; the mental development of a six-year-old is

5

fine for six-year-olds, but not for their parents . . . . if a dyslexic seven-year-old cannot learn as well as the average person, a court might begin by comparing his learning ability to that of the average seven-year-old[.]" 508 F.3d at 1103.

The Defendant argues that Mr. Cockburn's relevant comparison group must include "individuals from age 17 through adulthood." See NBME Reply at 6. The Defendant's definition of the population included in the Nelson-Denny scoring pool is incorrect. In this, the Defendant repeats the mistake of their expert witness Dr. Zecker, who stated that the lowest grade included in the normative sample for the Nelson-Denny Reading Test is "high school juniors." See Ex. B at 49:17-20. In fact, the Manual for Scoring and Interpretation of the Nelson-Denny makes clear that the normative sample for the test includes students as young as freshmen in high school. See Exhibit E, Excerpt from Nelson Denny Reading Test Manual for Scoring and Interpretation, Forms G & H, attached hereto, at 13.

As a result, the Defendant proposes that the relevant general population to determine if Mr. Cockburn is substantially limited in the areas of reading and learning would need to include 14-year-olds. As noted above, this is not a result that the court contemplated in Singh. Just as the Singh Court held that the proper person with whom to compare a dyslexic seven-year-old is another seven-year-old, the proper person with whom to compare Mr. Cockburn's performance on the Nelson Denny is not a 14 year-old but another 28 year-old, Mr. Cockburn's age at the time of Dr. Cullotta's assessment.

## CONCLUSION

The Plaintiff respectfully requests that this Court dismiss the Defendant's Motion for Summary Judgment for failing to show that there is no genuine issue of material fact.

6

RESPECTFULLY SUBMITTED,

/s/ Wayne D. Steedman
Wayne D. Steedman, Esq.
Federal Bar No. 09474
Callegary & Steedman, P.A.
201 N. Charles St., Suite 1402
Baltimore, MD 21201
(410) 576-7606
wayne@callegarysteedman.com
Attorney for Defendants

/s/ James F. Silver
James F. Silver, Esq.
Federal Bar No. 28571
Callegary & Steedman, P.A.
201 N. Charles Street, Ste. 1402
Baltimore, Maryland 21201
410-576-7606
james@callegarysteedman.com
Attorney for the Plaintiff

/s/ Judith A. Gran
Judith A. Gran, Esq.
Federal Bar No. 40134
Reisman Carolla Gran LLP
19 Chestnut Street
Haddonfield, New Jersey 08033
(856) 354-0061
jgran@reismancarolla.com
Attorney for the Plaintiff

DATED: February 24, 2011

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing document has been filed electronically and is available for viewing and downloading from the ECF system. Counsel of record for the Defendant were served through the Court's electronic case filing system.

/s/ James F. Silver